## AMERICAN NATIONAL BANK v. H. P. DEW ET AL.

(Filed 23 December, 1917.)

### 1. Judgments—Pleadings—Demurrer—Estoppel.

A judgment sustaining a demurrer to the pleadings upon the merits, while it stands unreversed, is conclusive as an estoppel in another action between the same parties upon the same subject-matter.

### 2. Corporations—Certificates of Stock — Pledgee — Defects — Good Faith—Notice.

Where a corporation has made out its certificate of stock, in proper form and properly signed, to a certain named person, and permits him to use it in the open market as collateral security for a loan, the corporation is bound by the acts of such person as its agent, and the holder who has taken the stock in good faith from him, without notice of any defect in the title of the pledgor, and for value, acquires a good title as against the corporation.

### 3. Same—Trials—Questions for Jury.

Where a certificate of stock of a corporation appears upon its face to have been regularly issued to a certain named person, and is pledged by him to a bank as collateral security for a loan, the question of whether the pledgee received the shares with actual notice of any equity claimed by the corporation is one for the jury under the evidence and not one of law for the court.

### 4. Estoppel—Corporations—Shares of Stock—Pledgee—Irregularity of Issue—Notice.

Where certificates of stock of a corporation appear to be regularly issued to a certain person, and they are by him pledged to another as collateral security for a loan, for value without notice of any irregularity in their issuance, the corporation is estopped, *in pais*, as against the innocent pledgee, from setting up that such shares had not been transferred on the books of the corporation.

### 5. Corporations—Shares of Stock—Pledgee—Bills and Notes—Extension of Payment—Consideration.

Where a bank renews a note of its customer upon consideration of the additional pledge of certificates of stock of a corporation, the extension of time accordingly granted is a sufficient consideration to make the bank a purchaser for value and protect it, as against the corporation, as an innocent holder of the certificate in due course, if it had no notice of any infirmity in the title of its pledgor.

### 6. Same—Antecedent Debt.

Promised forbearance to enforce an antecedent debt and extend the time of payment in consideration of the debtor's pledging additional collateral security, which was given, is sufficient to constitute the pledgee a holder for value. As to whether the pledgee's actual promise of forbearance is necessary or whether his implied promise is sufficient, *quære*.

### 7. Corporations—Liquidation—Actions—Parties.

A national bank in the course of liquidation may maintain an action to collect debts due it in order to wind up its affairs.

CIVIL ACTION, tried at May Term, 1917, of NEW HANOVER, before *Bond, J.*

Plaintiff brought this action to compel a transfer on its books by the defendant United Development Company of 25 shares of its stock purporting to have been issued by it to the defendant H. P. Dew and which the plaintiff received from him, as a purchaser for value and without notice of any defect in his title to the same, as collateral security to a note given by Dew for money borrowed from it. Other relief was prayed against H. P. Dew's codefendants. The following issues were submitted to the jury:

1. Is the defendant H. P. Dew indebted to the American National Bank in the sum of $1,750, with interest from 11 October, 1912, upon the note sued on this case?

2. Was the stock referred to of the United Development Company ever issued and delivered to H. P. Dew or to any one for him?

3. Was the plaintiff the owner as pledgee of Certificate No. 8, for 25 shares of stock in the United Development Company?

4. Did the plaintiff bank, in due course of business and without notice of any fraud, if any existed, receive said certificate of stock as collateral security to note given in renewal of unpaid balance on prior note, which prior note was originally given to said bank for money borrowed and in consideration of extension of time for payment of said balance?

5. Did the United Development Company wrongfully refuse to transfer said stock on the books of said corporation?

6. Was the real estate set forth in the complaint conveyed by the United Development Company to the Chatham Estates, Incorporated, without valuable consideration? No answer.

7. Was the real estate set out and described in the complaint fraudulently and wrongfully conveyed to the Chatham Estates, Incorporated? No answer.

8. At the time that Chatham Estates, Incorporated, took the conveyance of the property from the United Development Company, did it have notice of the rights of H. P. Dew or of this plaintiff? No answer.

9. Did defendants, or any of them, acting in concert with each other, wrongfully convey the land of the United Development Company to Chatham Estates, Incorporated, and thereby cause injury to plaintiff? No answer.

10. What was the value of the 25 shares of stock sued on at time property of said corporation was conveyed away? No answer.

11. Is the plaintiff estopped by the judgment which is pleaded in the further defense set up by defendants in their answer to this suit?

12. What damages, if any, is plaintiff entitled to recover of the defendants United Development Company, Chatham Estates, Incorporated, Chatham Park Land Company, Paul Chatham, and W. A. Ebert?

The jury answered the first issue "Yes," second issue "No," third issue "No," fourth issue "Yes," fifth issue "No," eleventh issue "Yes," except as to the United Development Company, as to whom nonsuit was taken, and the twelfth issue "Nothing"; and under the direction of the court did not answer the sixth, seventh, eighth, ninth, and tenth issues.

. The court instructed the jury as to the first, fourth, and eleventh issues, that if they believed the evidence those issues should be answered "Yes," otherwise "No;" and as to the second, third, and fifth issues, that if they·believed the evidence they should be answered "No," otherwise "Yes"; and as to the twelfth issue, that if they believed the evidence they should answer it "Nothing," otherwise such an amount as they should find to be due.

The court was of opinion, upon the verdict, that the plaintiff was not entitled to recover at all, and judgment was entered accordingly, and for costs against the plaintiff, whereupon it appealed to this Court.

*Rountree & Davis and McClammy & Burgwyn for plaintiff.*

*H. L. Taylor and Kenan & Wright for defendants other than H. P. Dew.*

WALKER, J., after stating the case: First. As to the estoppel and the eleventh issue. We are of the opinion that the presiding judge ruled correctly when he held that upon the result of the prior suit in the Superior Court of Mecklenburg County the plaintiff was estopped by the judgment therein as to all the defendants in this case who were parties to that action, except the United Development Company. It appears from a perusal of the record in that case that the complaints in the two cases are at least substantially alike, and that the same questions were determined in the former case as are now raised in this case, and the judgment of the Superior Court of Mecklenburg County is a complete and final adjudication of all matters embraced within its scope and settled conclusively against the plaintiff and in favor of the defendants who had not been nonsuited and who were parties defendant every question covered by the complaint and involved in the cause of action.

This does not apply to the United Development Company, for as to it the demurrer was overruled. The legal effect of sustaining a de-

6—175

murrer to a complaint, as an estoppel or *res judicata,* in any subsequent action brought for the same cause, if the former judgment is properly pleaded, has been considered by this Court several times. A recent case is *Marsh v. R. R.,* 151 N. C., 160, where it is said: "As applied to domestic judgments, it is a principle universally recognized that when a court has jurisdiction of a cause and the parties, and on complaint filed a judgment has been entered sustaining a general demurrer to the merits, such judgment while it stands unreversed and unassailed is conclusive upon the parties and will bar any other or further action for the same cause," citing *Johnston v. Pate,* 90 N. C., 335; *Willoughby v. Stevens,* 132 N. C., 254; *Alley v. Nott,* 111 U. S., 472; *Gould v. R. R.,* 91 U. S., 526, and *Miller v. Leach,* 95 N. C., 229, the last case holding that the doctrine applies to a judgment recovered in the court of another State having jurisdiction of the subject-matter and the parties and where, of course, there is no fraud in its procurement. The charge of the court upon the eleventh issue, in respect to the Mecklenburg judgment, was, therefore, correct.

Second. But we think that the court erred in its charge to the jury upon other issues, as there were phases of the case which, if the evidence was believed by the jury, entitled the plaintiff to their verdict. We presume the presiding judge was of the opinion that the plaintiff, though a pledgee of the certificate of the stock, was not a *bona fide* holder of it for value and without notice. Whether the plaintiff, when it received the stock as collateral for the debt owing by H. P. Dew to it, had actual notice of the equity claimed by the United Development Company was a question for the jury to determine upon the facts and circumstances, as there was nothing which, in law, would constitute notice. If the Development Company, by its own negligence or the negligence of its officers, to whom the possession of the stock made out to H. P. Dew in proper form and signed by the proper person was entrusted, allowed it to fall into the hands of H. P. Dew with such evidence appearing on its face of his lawful or rightful ownership, and thereby permitted him to use it in open market as collateral security for a loan which the plaintiff made to him, it is bound by the act of its agents, and the holder who has taken the stock in good faith without notice of any defect in the title of the pledgor and for value will be entitled to hold it as against the company by which it purported to have been issued. We so held in *Havens v. Bank,* 132 N. C., 214, where the subject was fully considered and many authorities cited in support of the principle. *Titus v. R. R.,* 61 N. Y., 237; *R. R. v. Bank,* 60 Md., 36; *McNeill v. Bank,* 46 N. Y., 325; *Allen v. R. R.,* 5 L. R. A. (Mass.), 716; *Bank v. Lanier,* 11 Wall., 369. A strongly reasoned case is *N. Y. & N. H. R. Co. v. Schuyler,* 34 N. Y., 30.

In *McNeill v. Bank, supra,* the Court stated the rule with great force, as follows: "The holder of such a certificate and power possesses all the external *indicia* of title to stock and an apparently unlimited power of disposition over it. He does not appear to have, as is said in some of the authorities cited, concerning the assignee of a chose in action, a mere equitable interest which is said to be notice to all persons dealing with him that they take subject to all equities, latent or otherwise, of third parties; but apparently the legal title and the means of transferring such title in the most effectual manner. Such, then, being the nature and effect of the documents with which the plaintiff entrusted his brokers, what position does he occupy towards persons who in reliance upon those documents have in good faith advanced money to the brokers or their assigns on a pledge of the shares? When he asserts his title and claims as against them, that he could not be deprived of his property without his consent, cannot he be truly answered that by leaving the certificate in the hands of his brokers, accompanied by an instrument bearing his own signature, which purported to be executed for a consideration, and to convey the title away from him and to empower the bearer of it irrevocably to dispose of the stock, he in fact 'substituted his trust in the honesty of his brokers for the control which the law gave him over his property,' and that the consequence of a betrayal of that trust should fall upon him who reposed it, rather than upon innocent strangers from whom the brokers were thereby enabled to obtain their money." And the language of the Court in *R. R. v. Bank, supra,* is equally as strong and convincing: "It may be conceded, and was doubtless the case, that the agent had no authority as between himself and his principal or other parties cognizant of the facts for doing the particular acts complained of; but the company, by its own act and, as it turned out, misplaced confidence, placed the agent in the position to do and procure to be done that class of acts to which the particular act in question belongs; and in such case, where the particular act in question is done in the name of and apparently in behalf of the principal, the latter must be answerable to innocent parties for the manner in which the agent has conducted himself in doing the business confided to him. Upon no other principle could the public venture to deal with an agent. In such case the apparent authority must stand as and for real authority." And again: "Where he issued such a certificate and delivered it to a third party, who acted without knowledge and in good faith, paying value for it, such party had the right to act upon the presumption that the representations of such certificates were truthful, and not false and fraudulent. Having confided to him the said trust of executing the business, the agent was held out to the public as competent, faithful, and worthy of confidence; and though he de-

ceived both his principal and the public, by forging and issuing false certificates, it is but reasonable that the principal, who placed him in the position to perpetrate the wrong, should bear the loss."

This principle was applied in *Cox v. Dowd,* 133 N. C., 537, where the *Chief Justice,* in delivering the opinion of this Court, said: "The recent opinion in *Havens v. Bank,* 132 N. C., 214, especially what is said at pages 222-225, renders it unnecessary to discuss the effect of a transfer in blank of a certificate of stock, which it is there held 'passes the entire title, legal and equitable, in the shares,' notwithstanding any requirements in the charter or by-laws that the stock shall be transferrable only on the books of the corporation. Besides cases there cited, we may add *Hirsch v. Norton,* 115 Ind., 341; 2 Thompson Corp., sec. 2368." In the Indiana case it is said that the property transferred, certificate of stock, is of a peculiar nature and is assignable in a peculiar method, so that the cases which govern the transfer of tangible personal property cannot control when the subject of the transfer is the capital stock of a corporation. The Court then says: "Where a party, by clothing another with all the legal *indicia* of ownership, enables him to mislead others, he, and not those who are misled by his acts, must be the sufferer. If loss comes, the man who invested the debtor with the evidence of absolute title, and thus misled creditors, must bear it, and not the creditors. The conclusion we assert involves little more than an application of the familiar general principle that where one of two innocent persons must suffer by the act of a third, he must suffer who put it in the power of the third to do the act."

The rule need not be based upon any principle in the law of negotiable instruments, but may rest upon the doctrine of equitable estoppel. It is true that the purchasers of nonnegotiable demands from others than the original owner of them can take only such rights as he has parted with, except when by his acts he is estopped from asserting his original claim, and it is established by all the authorities. He must, in such case, as *Lord Thurlow* said, abide by the case of the person from whom he buys. *Cowdrey v. Vandenburgh,* 101 U. S., 572. In that case it is said by *Justice Field*: "The principle is well settled that when the owner of property in any form clothes another with the apparent title or power of disposition, and third parties are thereby induced to deal with him, they shall be protected. The case of *McNeill v. Bank,* in the Court of Appeals of New York, contains a clear statement of the law on this head. There, it is true, a certificate of stock was pledged with a blank assignment and power of attorney indorsed, which the pledgee afterwards filled up and then disposed of the stock. It was evident that the owner contemplated that the blanks in the assignment and power should be filled up, if it should ever become necessary. 46 N. Y., 325.

But the principle stated by the Court is as applicable where no such intention is manifested. The rights of innocent third parties, as the Court there observes, 'do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance.' Here the complainants could have expressed in their indorsement the purpose of the deposit of the certificate with Blumenburgh, that it was as security for a specified sum of money, and thus imparted notice to all subsequent purchasers or assignees that the pledgee held only a qualified interest in the claim. But having endorsed their name in blank, they virtually authorized the holder to transfer or dispose of the certificate by writing an absolute assignment over their signatures."

If, therefore, the plaintiff in this case received the stock in pledge as security for its debt and did so in good faith for value, and without notice of the company's rights or equities, it acquired a good title thereto as against the latter, notwithstanding that the stock had not been transferred to him on the books of the company. *Havens v. Bank, supra,* and cases cited, to which we add 1 Cook on Stocks and Stockholders, 3 Ed., sec. 487.

The next question is whether the plaintiff is a bona fide holder, or pledgee, of the certificate of stock, as purchaser for value and without notice of any right of the United Development Company therein. It appears that the plaintiff was not satisfied with the security it had for the note of H. P. Dew, namely, 160 shares of the Peoples Bank of Blacksburg, and refused to extend the time of payment unless it was strengthened by the deposit with it of additional collateral, and on 15 April, 1912, the note, being then for the amount of $1,900, was renewed, the time of payment being extended for four months, or until 13 August, 1912, and this was done in consideration of the deposit of the certificate for 25 shares of stock in the United Development Company. The stock was transferred to the plaintiff and a renewal note given for the balance owed by H. P. Dew. There was evidence tending to show that the plaintiff would not have granted the forbearance unless the certificate for the 25 shares of stock had been deposited as additional collateral security, for the Peoples Bank of Blacksburg, S. C., was not in good financial condition, and the 160 shares of its stock, which the plaintiff already held as security for the payment of the note, was not considered adequate under the circumstances. Plaintiff had actually called for more collateral. This, we think, constituted value sufficient to protect the plaintiff as an innocent holder of the stock certificate, provided

it had no notice of any infirmity in Dew's title, and whether it had or not was a question for the jury, there being evidence from which the jury might infer that it had no such notice.

Colebrook, in his work on Collateral Securities, sec. 269, says: "The pledgee of certificates of stock receiving the same indorsed, with an irrevocable power of attorney to transfer, in good faith, without notice, and for value advanced thereon, is entitled to the privilege of a bona fide purchaser for value, in the usual course of business. Such indorsement and delivery of certificates of stock as collateral security vests the legal and equitable title in the pledgee and he holds the absolute ownership of the shares of stock represented thereby. His title, when he has advanced value in good faith, without notice, cannot be impeached, although the act of pledge be a fraud and misappropriation of such certificates of stock by persons intrusted therewith so as to have the apparent ownership. The title thus acquired by an innocent pledgee for value of stock collaterals is sustained as between the parties, and (in the absence of restrictive statutory or charter provisions) as against the company and third parties seeking by legal process to subject such shares of stock to the payment of debts or other liabilities of the pledgor, although no transfer thereof has been made on the books of the company issuing the same, or notice given."

And again at section 270: "It is established by commercial usage that a certificate of stock endorsed with an irrevocable power of attorney in blank or filled up is, in the hands of a third person, presumptive evidence of ownership of the holder. The title of an innocent holder for value, and in the usual course of business having possession of the certificate, endorsed to himself or in blank, is good against the world. Subsequent purchasers of such certificates, although paying value but not receiving the certificates, the company issuing the stock when a transfer is demanded by such holder for value without notice, the creditors of the pledgor and transferrer are not allowed to impeach the title of such innocent holder for value. The transfer of certificates of stock, endorsed, under the general usage of dealers in securities and on exchanges, vests in the holder for value, without notice, more than the mere equitable title obtained upon the assignment and delivery of a nonnegotiable chose in action. The legal ownership vests in the endorsee of a stock certificate, endorsed in blank, as in the case of the favored instruments of commerce."

Cyc., vol. 10, p. 636 (b), says: "Where a certificate of shares is regular on its face, imports ownership in its holder, and contains no intimation of any equities impairing such ownership or full title, whether in the corporation or in third persons, an intending purchaser is not bound to suspect fraud or infirmity of title, or to go back and search

the register, but may rely upon the disclosures of the certificate." And again, at pages 624 (e) ànd 635: "Where the shares of a corporation are offered for sale by the person named in the certificate, an intending purchaser is not required to look beyond the recitals of the certificate in regard to his title or the equities of the corporation, or to suspect fraud in the issuing of the shares, where all seems fair and honest. He is not bound to examine the books of the corporation to ascertain the validity of a transfer. The reason arises from the nature of a share certificate, which as already stated is a continuing affirmation of the ownership of the specified amount of stock by the person designated therein or his assignee, until it is withdrawn in some manner recognized by law; and a purchaser in good faith has a right to rely thereon and to claim the benefit of an estoppel in his favor as against the corporation. . . . By parallel reasoning the corporation should be held liable where through its negligence it suffers its share certificates, formally filled out, signed and sealed, to get out upon the market, where they may operate to deceive innocent purchasers."

With more particular reference to the vital question in this case, Colebrook says, at section 279: "Upon a pledge of certificates of stock for an antecedent debt, new notes being given as evidence thereof, the pledgee is regarded as a holder for value within the rule, as the transaction amounts to a valid extension of the time for payment."

And to the same effect is Norton on Bills and Notes, p. 315, where he says: "Where the preëxisting debt has fallen due, and there is a transfer of a bill or note as collateral security with an express agreement for delay, the forbearance is a sufficient consideration. This is because such forbearance is a surrender by the holder of his valuable right of immediate prosecution. But the rule only applies for the reason that the holder, by valid agreement, has estopped himself from prosecuting."

And this accords with what was held in *Black v. Tarbell,* 89 Wis., 390, 393: "If the plaintiff had received the collateral note in suit after his endorsement was made and his liability fixed, no other fact appearing, he would not be a bona fide holder for value. But it affirmatively appears that, in consideration of the receipt of this collateral, he definitely extended the duration of his liability, and so the case comes within the first rule laid down in *Bowman v. Van Kuren,* 29 Wis., 219. The note was transferred not only as collateral to a preëxisting obligation, but in consideration of a definite extension of the duration of such obligation. This makes the plaintiff clearly a bona fide holder for value before due, and precludes the defense which the defendant attempts to make here," citing *Body v. Jewson,* 33 Wis., 402-409. We have not lost sight of the rule, which formerly prevailed in this State, that a

precedent debt did not constitute value in the transfer even of negotiable instruments as against a prior equity. *Harris v. Horner,* 21 N. C., 455; *Holderby v. Blum,* 22 N. C., 51; *Potts v. Blackwell,* 56 N. C., 449. But this has been changed by the Negotiable Instruments Law, Revisal, sec. 2173. *Brooks v. Sullivan,* 129 N. C., 190. This old rule was known as that of the New York Court, based upon the opinion of *Chancellor Kent* in *Bay v. Coddington,* 5 Johns., ch. 54 (9 Am. Dec., 268), and the opposite one, holding a preëxisting debt to be sufficient value to protect the holder of the paper, was called the Federal Rule, based upon *Swift v. Tyson,* 16 Peters, 1 (10 L. Ed., 865). The subject is carefully reviewed and the authorities collected and explained in *Exch. Nat. Bank v. Coe,* 31 L. R. A. (N. S.), 287 and note.

But this is not our question, as here there was evidence that plaintiff extended the time of payment when the certificate of stock was taken and the forbearance was the consideration for adding to the other security which had become discredited. The annotator of *Exch. Nat. Bank v. Coe, supra,* at p. 298 of L. R. A., N. S., under the title of "Extension of Time," says: "Authorities which disagree on the subject of the rights of one who takes a bill or note as collateral security for a preexisting debt are in accord in holding that if the transferee grants an extension of time or surrenders other rights, he is considered as having parted with value, and may enforce payment as a bona fide holder. Thus, a note transferred to secure a preëxisting obligation in consideration of an extension of time for the payment of the debt makes the transferee a bona fide holder for value, and the note is not subject to the defense of payment by the maker to the bank to which it had originally been given," citing *L. Banking Co. v. Howard,* 123 Ala., 380, and many other cases for his statement of the law, and among them *Fretwell v. Carter,* 78 S. C., 531, which is more like our case in its facts than perhaps any of the others. He says of that case: "The Court held that a note in which the name of the payee had been left blank but which had been signed and endorsed by others, and which another, to whom it had been delivered, negotiated to an innocent holder as collateral for a past indebtedness, thereby obtaining an extension of time, is a valid contract which the holder may enforce free of any equities existing between the original parties."

It is decided by some courts that a valid promise to forbear must be shown, and not the mere fact of a voluntary forbearance, though other courts hold that a promise to forbear which may be implied from the nature of the transaction and its circumstances is sufficient value. We need not settle this difference, as there is evidence of an actual promise to extend the time of payment, and that the deposit of the collateral was the consideration of the promise. See, also, 3 R. C. L., secs. 263 and

BANK *v.* DEW.

264; 1 Daniel Neg. Instr. (Calvert Ed.), sec. 829A, and *Harvester Co. v. McLean,* 57 Wis., 258, where it is said: "If there was an express or implied agreement on the part of a creditor to extend the day of payment on the delivery to him of a note as surety for his debt, then the creditor receiving such note was an innocent holder thereof for value."

Certificates of stock are largely used now in commercial transactions as collateral, and there is a growing disposition of the courts to allow them the advantages of commercial paper, though they are not such in form; but we need not put our decision on any such ground, as it can well rest on the other principle which we have stated, that when one of two innocent parties must suffer by the wrong of another, he who made it possible for him to commit the wrong should bear the loss resulting therefrom. The doctrine of implied agency arising out of negligence has its true basis in the principle of *estoppel in pais;* and is founded upon the injustice of allowing a party to be the author of his own misfortune, and then to charge the consequence upon others; and it implies an act in itself invalid, and a person forbidden, for equitable reasons, to set up its invalidity. *R. R. v. Schuyler,* 34 N. Y., 30. It results that the charge of the court was erroneous, as the jury could have believed the evidence and yet have decided in favor of the plaintiff. The case must, therefore, be submitted to another jury with instructions from the court, so that they may find the facts and apply the law thereto.

Third. Plaintiff had the right to bring this action, notwithstanding it had gone into liquidation. The corporation was not dissolved or extinct, and it is necessary to collect its assets in order to wind up its affairs. *Cent. Nat. Bank of Baltimore v. Conn. M. L. Ins. Co.,* 104 U. S., 54, 72; *Pritchard v. Barnes,* 101 Wis., 89; *Hutchison v. Crutcher,* 98 Tenn., 427; *Chemical Bank v. Hartford Dep. Co.,* 161 U. S., 8.

The learned presiding judge doubtless was of the opinion that in order to constitute the plaintiff a bona fide holder for value, it must have parted with something, as money or at least money's worth; but we think that by extending the time of payment, if the note was an old one, plaintiff gave up valuable rights, which is sufficient to defeat the equity of defendant, if other elements, such as want of notice and good faith, are present. The taking of the new note for $1,900 was a definite extension of the time of payment. 8 Corpus Juris., 425.

Our conclusion is that there should be a new trial for an error in the charge.

New trial.