·YOUNG *v.* HARRIS-CORTNER· CO. *et al.*

*(Jackson.* April Term, 1924.)

1. **WAREHOUSEMEN.** Burden on holders to show warehouse receipts were obtained in due course for value.

Though persons may acquire warehouse receipts in good faith notwithstanding they knew receipts contained false statements, where receipts obtained by fraud were negotiated to defendants by delivery, burden was on them to show that they acquired receipts honestly, and that they were holders in due course for value. (*Post, pp.* 35, 36.)

Cases cited and approved: Bank v. Chatfield, 118 Tenn., 481; Fox v. Cortner, 145 Tenn., 485.

2. **WAREHOUSEMEN.** Evidence held to warrant finding transferees of warehouse receipts where not holders in due course for value.

Evidence *held* sufficient to warrant finding that transferees of warehouse receipts obtained by fraud were not holders in due course for value. (*Post, pp.* 36-38.)

3. **REPLEVIN.** Proof of title unnecessary.

Replevin is a possessory action, and it is not necessary to prove title. (*Post, pp.* 38, 39.)

4.· **REPLEVIN.** Owner of undivided interest, having landlord's lien, held entitled to bring replevin for cotton.

Owner of one-half undivided interest in cotton who had landlord's lien on other half for amount exceeding its value, and was authorized by tenants to sell cotton and apply proceeds on lien, was entitled to bring replevin for cotton. (*Post, pp.* 38, 39.)

Cases cited and approved: Shaddon v. Knott, 32 Tenn., 358; Dearmon v. Blackburn, 33 Tenn., 390; Woodson v. Pierce, 37 Tenn., 416; Wilson v. McQueen, 38 Tenn., 18; Parham v. Riley, 44 Tenn., 9; Brammell v. Hart, 59 Tenn., 366; Duncan v. Starr, 77 Tenn., 239; Shields v. Dodge, 82 Tenn., 356; Cartwright v. Smith, 104 Tenn., 690; Lieberman v. Clark, 114 Tenn., 127.

---

FROM HARDEMAN.

---

On petition for rehearing.  Petition denied.

Appeal from the Chancery Court of Hardeman County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— HON. —— ——, Chancellor.

C. A. MILLER and H. E. CARTER, for plaintiff.

J. T. ROTHROCK, JR., for defendants.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

It is said that, notwithstanding the false recitations in the receipts, the defendants are nevertheless holders in due course for value, since the evidence does not show that they acquired said receipts "dishonestly."

We can conceive how the defendants might have acquired these receipts in good faith, notwithstanding they knew that they contained false statements.  Hence the bare abstract statement that the defendants did not acquire said receipts in good faith, because of their knowledge of their false recitations, was not correct.  But, when such false recitations are considered in connection with the other facts and circumstances of the cause, we concur with the court of civil appeals in holding that they are not holders in due course for value.  Bearing in mind that McNamee obtained said cotton and said receipts by fraud, and subsequently negotiated them to the

defendants, by delivery, the burden was upon the defendants to show that they acquired said receipts honestly, and that they are holders in due course for value. *Bank* v. *Chatfield,* 118 Tenn., 481, 101 S. W., 765, 10 L. R. A. (N. S.), 801; *Fox* v. *Cortner,* 145 Tenn., 485, 239 S. W., 1069, 22 A. L. R., 1341.

So far as defendants, Weil Bros., are concerned, they introduced no proof to sustain their claim of holder in due course for value.

As to the other defendants, the court of civil appeals in its opinion said:

"The proof shows that Harris-Cortner Company was a partnership composed of R. G. Cortner, at Decatur, Ala., R. N. Harris, Jr., Town Creek, Ala., H. B. Bynum, Courtland, Ala., and S. S. Fletcher, Huntsville, Ala. That company introduced only one witness, who was chief clerk for that defendant at Decatur, Ala., whose duties were to buy and sell cotton, pay for same, shipping and general supervision of books and detail work in the office at Decatur, Ala. He testified that his company purchased the eight bales of cotton from McNamee, and he filed the warehouse receipts as exhibits to his testimony; that samples of this cotton were sent to his company at Decatur together with other samples, and after they were examined he was telephoned the price which he accepted, and that he drew drafts on the company with the invoices and receipts attached, and that the drafts were paid by checks issued by the company; that he did not know whether he himself or Mr. Cortner telephoned, or bought the cotton over the telephone, and presumed that the invoices were mailed from Bolivar, or said he did not know of his own knowledge; that he did not re-

member whether he personally received the envelopes and opened the mail in which these invoices were received; that he did not remember when the invoices and samples were received, but that it was bought by sample. He further testifies that the drafts were paid on December 23d and 24th by checks given in the office of Harris-Cortner Company, and that the drafts showed that they were payable to the order of the City National Bank; and that Harris-Cortner Company had no notice that McNamee had not paid for same.

"None of the partners went on the stand to show that they were *bona-fide* purchasers for value without notice. It is clear from the testimony of the bookkeeper that he had gained most of his knowledge from the books and papers in the office of Harris-Cortner Company, and his testimony shows that he does not remember whether he did the negotiating with McNamee or whether it was done through Mr. Cortner.

"This is all the evidence on the question. We do not think that this evidence sufficiently shows that all the members of the firm were *bona-fide* purchasers without notice. Of course, if the defendant was a corporation and one of its officers or agents shows that he did all of the negotiation of the transaction, we think this would be sufficient to show these facts. If not controverted, one witness is as good as a thousand, but it depends upon his knowledge and opportunity to know all the facts. We notice a few rather significant facts that all of the cotton fraudulently purchased by the defendant McNamee at Bolivar was either sold to the defendant Harris-Cortner Company or to Weil Bros., and that none of the really interested defendants went on the stand to explain the

transactions, but leave it to a bookkeeper who manifestly does not know and did not have opportunity to know all the facts concerning the negotiation and purchase of this cotton. Hence we are of the opinion that the defendants have failed to sustain the burden of proof that they were innocent purchasers for value without notice.

"In the case of *Bank* v. *Chatfield,* supra, our supreme court quoted with approval from 8 Cyc., pp. 235-240, as follows:

" 'The presumption of good faith may be rebutted, like other presumptions. Thus the presumption of good faith includes the presumption that the holder took the bill in the ordinary course of business, but the burden of proving good faith is shifted to the indorsee by proof that he paid for the paper much less than its face. So, evidence that the bill was lost or stolen shifts the burden of proving good faith, and throws it on the holder. . . . Evidence of illegality or fraud in the origin or transfer . . . throws on the holder the burden of proving his good faith, and if the holders are partners the good faith of all must be shown.' "

This conclusion of the court of civil appeals meets with our approval. It is also said that we overlooked the question of the right to maintain a replevin suit where the complainant is not the absolute owner of the property.

The complainant owned a one-half undivided interest in the cotton, and had a landlord's lien on the other half for supply accounts, which exceeded its value. He was authorized by his tenants to sell the cotton and apply the proceeds on their accounts.

In this state replevin is a possessory action, and it is unnecessary to prove title. *Shaddon* v. *Knott*, 2 Swan, 358, 58 Am. Dec., 63; *Dearmon* v. *Blackburn*, 1 Sneed, 390, 60 Am. Dec., 160; *Woodson* v. *Pierce*, 5 Sneed. 416; *Wilson* v. *McQueen*, 1 Head, 18; *Parham* v. *Riley*, 4 Cold., 9; *Brammell* v. *Hart*, 12 Heisk., 366; *Duncan* v. *Starr*, 9 Lea, 239; *Shields* v. *Dodge*, 14 Lea, 356; *Cartwright* v. *Smith*, 104 Tenn., 690, 58 S. W., 331; *Lieberman* v. *Clark*, 114 Tenn., 127, 85 S. W., 258, 69 L. R. A., 732.

All the matters set forth in the petition to rehear have been carefully considered, and upon the whole, we find no occasion to depart from the result announced in our original opinion, and the petition to rehear will therefore be denied.