HANDLEY MOTOR CO., INC., v. E. A. WOOD AND W. W. WINSTEAD, TRADING AS W. &. W. MOTOR COMPANY.

(Filed 18 March, 1953.)

**1. Courts § 16—**

Where all the evidence shows that the sale of the automobile in suit took place in the District of Columbia, its laws, unless contrary to public policy of this State, govern substantive features of the case under the doctrine of comity, but the laws of this State govern matters of procedure, including the pleadings.

**2. Payments § 2: Sales § 11—**

Under the laws of the District of Columbia if a so-called cash sale is made upon delivery of a check by the purchaser, such payment is conditional and title does not pass until the check is paid, and if the check is dishonored, title remains in the seller. Such law will be enforced in this State under the doctrine of comity because such is the law of this State.

**3. Sales § 12—**

As a general rule, the seller of personal property without title cannot transfer a better title than he has, unless some principle of estoppel comes into operation, and the true owner may assert his title even as against an innocent purchaser for value.

**4. Same: Principal and Agent § 7d—**

The fact that the owner has entrusted the mere possession and control of personal property to another is ordinarily insufficient to estop him from asserting his title against a person who has dealt with the possessor on the faith of his apparent ownership or authority to sell; but where the owner clothes such other with apparent title or power of disposition, and third parties are thereby induced to deal with him, they shall be protected.

**5. Same: Automobiles § 5—**

Where there is no evidence that successive purchasers of an automobile from the person who acquired possession from the original dealer had any knowledge of any asserted registration card given such purchaser by the original dealer, there is no evidence to estop the original dealer from asserting his title against such subsequent purchasers.

**6. Estoppel § 11a—**

An equitable estoppel must be pleaded.

**7. Sales § 12: Automobiles § 5—**

Where conflicting inferences can be drawn from the evidence as to whether defendants were *bona fide* purchasers for value without notice, a peremptory instruction in their favor upon the issue is error.

APPEAL by plaintiff from *Williams, J.,* September Civil Term, 1952, of WILSON.

Civil action in claim and delivery for the recovery of an automobile.

The following is a summary of the plaintiff's evidence. Handley Motor Co., Inc., the plaintiff, at the times complained of, was an authorized dealer for the Ford Motor Co., selling new Fords in Washington, D. C. When it receives a new car, it receives a manufacturer's certificate of origin showing proof of ownership. There are three assignments on the back of the certificate to be signed by the dealer when the car is sold. The plaintiff has this certificate in its possession, and has never turned it over to anyone, nor signed any of the assignments on the back. A day or two before 6 January, 1951, James P. Junghans, Jr., made a deposit of $50.00 in cash on the new Ford automobile described in the complaint, owned by the plaintiff, which was on display at its place of business for sale. The banks in Washington, D. C., are closed on Saturday. On Saturday, 6 January, 1951, Junghans came to get the automobile, and tendered in payment his personal cheque—not certified—drawn on a Washington, D. C., bank in the amount of $1,847.50. The price of this car delivered was $1,897.50. The salesman brought Junghans to Mrs. Marie Cross, Secretary and Office Manager, of the plaintiff. Junghans told Mrs. Cross he needed the car over the week-end, and requested her to let him have the car, and hold the certificate of origin until his cheque cleared the following week. Mrs. Cross let him have the possession of the car with that understanding. On Monday, 8 January, 1951, the plaintiff was informed by the bank Junghans' cheque was worthless. That afternoon about 2 :00 o'clock Junghans came in, and asked for the certificate of origin to go to Baltimore to get his Maryland tags. The request was refused, and he was told his cheque was worthless. Junghans said he would go to his home at Silver Spring, Md., about 3 miles from Washington, and get cash for the car. He never came back, his cheque has never been paid, nor has he paid anything on the car, except his $50.00 deposit. On Wednesday, 10 January, 1951, the plaintiff told Junghans over the telephone he would have to bring cash or return the car. He said he would, but has done neither. On Monday, 15 January, 1951, the plaintiff asked the police and the Motor Vehicles Departments of the States of New York and Pennsylvania to try to locate the car.

The plaintiff never executed and delivered any title to the car to Junghans nor to anyone. The plaintiff did not give Junghans a ten day temporary registration card, nor did it give him a receipt for his cheque. Junghans said he had his own license plates to use in driving the car away. Mrs. Cross handles all sales transactions for plaintiff. The plaintiff never had any prior business with Junghans. It made no credit investigation. It was a cash sale.

The plaintiff offered in evidence in rebuttal a deposition of Junghans. It was in accord with the evidence offered by the plaintiff in chief, except as set forth below. Junghans testified that the plaintiff gave him a

receipt that he had paid on this car $1,847.50, which is now in his records, and also a ten day temporary registration card. He didn't remember if he received any tags—he thought the plaintiff put a set of dealer's tags on. At the time Junghans was a fleet taxicab owner in Silver Spring, Md. He bought this car for Mr. Goldberg, who works in Philadelphia for a man by the name of Mozes, whom he has not met. Goldberg said he was in the car business. Immediately after the plaintiff let Junghans have the car, he turned it over to Goldberg about a block from where he received it from the plaintiff. Goldberg gave Junghans $1,897.50 in cash for the car. Junghans gave Goldberg no papers: "How could I when I didn't have any papers?" He did not give Goldberg a receipt for the money.

The plaintiff offered in evidence the manufacturer's certificate of origin of this car and Junghans' worthless cheque.

The plaintiff instituted this action in Wilson County 26 January, 1951, and summons was duly served on the defendants. At the time this automobile was seized under claim and delivery, and the defendants replevied it.

The following is a summary of the defendants' evidence. It consisted of the depositions of Leonard Goldberg and Adolph Mozes, and the testimony of the two defendants and 4 exhibits.

Leonard Goldberg lives in Philadelphia, Penn., and buys and sells automobiles. He is not employed by anyone. He had bought approximately 70 cars from Junghans. About noon Saturday, 6 January, 1951, he bought this Ford car from James P. Junghans, Jr., in Silver Spring, Md., paying him for it approximately $1,835.00 in cash. At the time and place Junghans gave Goldberg a Bill of Sale—which was offered in evidence—which states that Junghans sells, assigns and transfers this Ford automobile to Mozes Autos, Philadelphia, Penn. It was notarized on 6 day of .... ........, 1951, by one Miller, a Notary Public of Philadelphia, Penn. Goldberg did not receive from Junghans a certificate of title; Junghans saying the certificate was in progress. A new car comes from the factory with a certificate at large, which is sent to the Department of Motor Vehicles, and they issue a title certificate. Junghans was not a car dealer. Goldberg always got title certificates in the other 70 deals he had with Junghans. He never received a certificate of title from Junghans on this car. He brought this car to Philadelphia, and was going to deliver it to Lee Motors, Long Island, N. Y., on Sunday afternoon. About 9:00 o'clock p.m. he received a call to deliver the car to Mozes Autos, Philadelphia. He bought this car in his own capacity. He sold the car to Lee Motors for $1,885.00. He delivered the car to Mozes Autos on Sunday morning. Lee Motors did not inquire of Goldberg if he had received a title certificate. Goldberg knew Junghans had bought

this car from plaintiff. Goldberg was not in the District of Columbia that day. He delivered no papers to Mozes Autos with the car.

Adolph Mozes is a used car dealer in Philadelphia. On 6 January, 1951, he bought this Ford car from Lee Motors, Long Island, N. Y., paying for it $1,910.00 in cash—$25.00 to Lee Motors and $1,885.00 to Goldberg. He knew Lee Motors was not in possession of the car, and that Goldberg was. Goldberg was not Mozes' employee. Several days after the transaction Mozes received a title certificate for this car from Lee Motors. Mozes contacted Lee Motors about the purchase of this type car 6 January, 1951, about 3 :00 p.m. They informed him they did not have one there, but they had contracted to buy one from Leonard Goldberg. On Saturday, 6 January, 1951, Mozes sold this car to the defendants at Wilson, North Carolina, for $2,000.00. About a week later he gave the defendants a title certificate to this car from the State of Pennsylvania. On Sunday, 7 January, 1951, the defendants had a driver to get this car, and it was delivered to them in Wilson, North Carolina, on 8 January, 1951. Mozes testified Goldberg delivered to him no papers on the car, and that when Goldberg brought the car to Mozes it had on it Mozes' dealer's tags. Mozes testified he did not know where Goldberg got the car. Mozes sold this car to defendants in about 15 minutes after he received it. Mozes said "as a matter of fact W. W. was waiting for the car; the deal was all fixed late Saturday on the telephone."

The defendants are used car dealers in Wilson. They bought new and used cars from dealers in cities, because the factories allot more new cars to dealers in cities than small towns, therefore, they can buy them close to their invoices. They were having calls for new Fords. On 6 January, 1951, they called Mozes Autos, from Wilson, and bought this car. They did not know from where Mozes Autos got this car. They had a driver in Philadelphia to pick up this car and some others. The defendants offered in evidence the $2,000.00 cheque which they paid for this car. The defendants received from Mozes Autos an invoice for the car, which they introduced in evidence. They paid the driver by cheque, for driving the cars, $110.00, and introduced it in evidence. The defendants sold this car 10 January, 1951. The defendants had dealt with Mozes Autos since 1949, their sole relationship being buyer and seller. They had no knowledge at the time of purchase or information leading them to believe that there was anything wrong with the title to the car. To the question eliciting this answer the plaintiff objected, was overruled, and excepted. The defendants had never heard of Junghans at the time. The defendants knew Mozes Autos was not an authorized Ford dealer. The defendants' plates were on this car when it was brought from Philadelphia; they leave plates with their driver there.

The court submitted to the jury two issues. The first being: "Is the plaintiff the owner and entitled to the possession of the Ford automobile described and referred to in the complaint?"; and the second being as to the value of the car at the time it was seized under claim and delivery. It was agreed that the value of the car was $1,897.50. The court instructed the jury on the first issue "if you find the facts to be as all the evidence tends to show, you will answer the first issue No." The jury answered the first issue No, and the second issue $1,897.50. From judgment on the verdict, the plaintiff appealed, assigning errors.

*Gardner, Connor & Lee for plaintiff, appellant.*
*Carr & Gibbons for defendant, appellee.*

PARKER, J. All the evidence shows that all the transactions as to the sale of the new Ford automobile described in the complaint between the plaintiff and James P. Junghans, Jr., and the delivery of it by the plaintiff to Junghans took place in the District of Columbia. Therefore, the sale in its substantive features is governed by the laws of the District of Columbia, and such laws on the doctrine of comity in the forum will be enforced in North Carolina, unless contrary to the public policy of this State. *Price v. Goodman,* 226 N.C. 223, 37 S.E. 2d 592; 11 Am. Jur., Conflict of Laws, Sec. 140.

The District of Columbia in 1937 adopted the Uniform Sales Act. D. C. Code 1940, Secs. 28-1101 to 28-1608. Sec. 18 of the Uniform Sales Act, which is Sec. 28-1202 of the D. C. Code 1940, is as follows: "Property in specific goods passes when parties so intend.—(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

In *Daine v. Price,* Mun. Court of Appeals for the District of Columbia, 63 A. 2d 767 (1949) the Court said: "In the case of a so-called cash transaction in which the passage of title depends upon payment, a check is generally considered conditional payment only and does not operate to effect payment unless the check is itself paid." The District of Columbia Court cites in support of its statement *"Standard Inv. Co. v. Town of Snow Hill, N. C.,* 4 Cir., 78 F. 2d 33; and see *Publicker Commercial Alcohol Co. v. Harger,* 129 Conn. 655, 31 A. 2d 27." In the *Town of Snow Hill case, Parker, Circuit Judge,* speaking for the Court, said: "The rule that a check of a debtor is merely conditional payment applies to obligations arising out of immediate transactions, as well as to payment of antecedent debts; and where there is a sale for cash on delivery,

and payment is made by check of the buyer, such check constitutes only conditional payment. Until the check is itself paid, the title, as between the parties, passes only conditionally; and upon dishonor of the check, the seller may rescind the transaction and reclaim that with which he has parted," citing many authorities in support.

All the evidence in this case tends to show that the sale of this car to Junghans was a cash sale, and that Junghans gave for the purchase price a worthless cheque. If a jury should so find from the evidence then under the laws of the District of Columbia no title to the car passed to Junghans, but the plaintiff retained the legal title.

Such law will be enforced in the courts of North Carolina, because such is the law of this State. *Parker v. Trust Co.,* 229 N.C. 527, 50 S.E. 2d 304, which cites many authorities to support its ruling. See also *Davidson v. Furniture Co.,* 176 N.C. 569, 97 S.E. 480.

Title like a stream cannot rise higher than its source. The general rule is that a seller of personal property without title cannot transfer a better title than he has, unless some principle of estoppel comes into operation, where the owner by some direct and unequivocal act has clothed the seller with the indicia of ownership. It is also the general rule that the fact that the owner has entrusted someone with the mere possession and control of personal property is not sufficient to estop the real owner from asserting his title against a person who has dealt with the one in possession on the faith of his apparent ownership or authority to sell. It is also well settled that when the owner of personal property in any form clothes another with the apparent title or power of disposition, and third parties are thereby induced to deal with him, they shall be protected. 46 Am. Jur., Sales, Sec. 458 and Sec. 460; *Cowdrey v. Vandenburgh,* 101 U.S. 572, 25 L. Ed. 923; *Supply Co. v. Machin,* 150 N.C. 738, 64 S.E. 887; *Bank v. Dew,* 175 N.C. 79, 94 S.E. 708; *Bank v. Winder,* 198 N.C. 18, 150 S.E. 489; *Discount Corp. v. Young,* 224 N.C. 89, 29 S.E. 2d 29; *Parker v. Trust Co., supra.*

While Mrs. Cross testified that the plaintiff gave Junghans no records or papers of any kind, and Junghans testified the plaintiff gave him a receipt that he paid $1,875.50 for the car and a ten day temporary registration card, there is no evidence that Goldberg ever saw such a receipt and temporary registration card, and they were not introduced in evidence. There is no evidence, if the plaintiff gave Junghans such papers, Goldberg was induced thereby to buy the car from Junghans relying upon such papers; Lee Motors, Mozes Autos and the defendants knew nothing about any such papers according to the evidence. There is no evidence to estop the plaintiff from asserting its legal title. Further, the defendants have not pleaded an estoppel, as they are required to do to be available to them as a defense. *Laughinghouse v. Ins. Co.,* 200 N.C. 434,

157 S.E. 131; *Keen v. Parker,* 217 N.C. 378, 8 S.E. 2d 209; *Motors v. Alexander,* 217 N.C. 750, 9 S.E. 2d 469. "The *lex fori* also governs the rules of pleading." 11 Am. Jur., Conflict of Laws, p. 502; *Central Vermont R. Co. v. White,* 238 U.S. 507, 59 L. Ed. 1433.

If the jury found as all the evidence tends to show that the plaintiff's sale to Junghans was a cash sale, and Junghans paid for the car with a worthless cheque, the title is still in the plaintiff, and as there is no evidence nor defense in the answer that the plaintiff is estopped to assert its title, then under those circumstances it is an elementary general rule, which is incorporated in the Uniform Sales Act, Sec. 23, that no one can transfer a better title than he has, and, with certain well known exceptions, an innocent purchaser for value from one without title does not acquire title as against the true owner. 46 Am. Jur., Sales, Sec. 458; Vold, Sales, pp. 174-176; Williston on Sales, Rev. Ed., Vol. 2, Sections 346a and 346b.

Williston, *ibid.,* Sec. 346a, says: "Sometimes after a bargain for a cash sale the buyer gives in payment of the price a worthless check, and it has been held that such a false check is no payment; and that not only does no title pass to the fraudulent buyer, but that the seller may assert his title against an innocent purchaser from the buyer," citing many cases in support of such statement. Williston criticizes such decisions as unsound, but says *ibid.,* p. 346, "it must be admitted that so far as the cases on worthless checks are involved the author's analysis is not supported by the weight of authority."

Vold, *ibid.,* p. 174, says: "Payment by check is without special agreement commonly regarded as only conditional payment until cashed. Following this analysis it is held by the great weight of American authority that delivering the goods to the buyer and taking his check for the price is not a waiver of the condition of payment in cash but that the property passes when the check is cashed. If, then, the check is dishonored on presentation, as for instance where it was forged or where the drawer had no funds, it is held that the goods still belong to the seller unless the seller is shown to have accepted the check in absolute payment, and that he can recover them from subsequent purchasers from the buyer even when they are purchasers in good faith for value without notice." In support of the statement "he can recover them from subsequent purchasers from the buyer even when they are purchasers in good faith for value without notice" Vold cites: *Barksdale v. Banks,* 206 Ala. 569, 90 So. 913; *Clark v. Hamilton Diamond Co.,* 209 Cal. 1, 284 P. 915; *Johnson v. Iankovetz,* 57 Or. 28, 102 P. 799, 110 P. 398; 29 L.R.A. (N.S.) 709; *Young v. Harris-Cortner Co.,* 152 Tenn. 15, 268 S.W. 125, 54 A.L.R. 516, Rehearing Denied, 152 Tenn. 34, 268 S.W. 1120; *John S. Hale & Co. v. Beley Cotton Co.,* 154 Tenn. 689, 290 S.W. 994.

In *Young v. Harris-Cortner Co., supra,* the Court said : "We feel safe in saying that, as a matter of custom and convenience, most of the cash transactions of the country are paid with checks. A farmer brings his cotton, tobacco, or wheat to town for sale and sells same, and as a general rule, is paid by check, although all of such sales are treated as cash transactions. If, in such a case, the purchaser can immediately resell to an innocent party and convey good title, it would follow that vendors would refuse to accept checks and would require the actual money, which would result in great inconvenience and risk to merchants engaged in buying such produce since it would require them to keep on hand large sums of actual cash. This would result in revolutionizing the custom of merchants in such matters."

"It is a general, well-established principle that no one can transfer a better title than he has. No person can by his sale"—in 135 N.E. the preceding word "sale" is left out—"transfer to another the right of ownership in a thing in which he has not the right of property, except in the case of cash, bank bills, checks, and notes payable to bearer, or transferable by delivery in the ordinary course of business to a person taking the same *bona fide* and paying value for it. (Citing authorities.) The purchaser of property wrongfully taken by his vendor from the true owner can obtain no more perfect title to the property purchased than the vendor himself possessed, and an innocent purchaser without notice of a wrongful taking can acquire no better title to property than his vendor had. 24 R.C.L. 374." *Drain v. State Bank,* 303 Ill. 330, 135 N.E. 780 (1922).

Our General Assembly has added another exception to the general rule by exempting therefrom Warehouse Receipts. G.S. 27-51.

"It is an elementary principle of the common law as to sales that one cannot transfer title to property in which he has no title or interest." *Coolidge v. Trust Co.,* 259 Mass. 515, 156 N.E. 701 (1927); *Hooper v. Britt,* 35 Ala. App. 612, 51 So. 2d 547 (1951).

*Dobbins v. Marlin Buick Co.,* 216 Ark. 861, 227 S.W. 2d 620 (1950), follows the general rule. The Martin Buick Company of Cookeville, Tennessee, brought this action of replevin to recover an automobile to which it claimed title. Title was also claimed by Dobbins. One Atkinson on 5 February, 1948, purported to purchase this car from the Buick Company at its place of business in Tennessee, and fraudulently gave a check on a nonexistent account in a Georgia bank in payment for the car. Atkinson, at once, took possession of the car, and the Buick Company gave Atkinson an invoice identifying the car and stating the price $1,825.00. Nothing in the invoice indicated that the price had been paid. No bill of sale was issued to Atkinson, it being the Buick Company's purpose to execute a bill of sale only after the cheque had cleared. The

cheque was worthless. Atkinson immediately brought the car to Arkansas, and secured, on 9 February, 1948, an Arkansas State license and a certificate of registration. Shortly thereafter Atkinson sold the car to the Baker Automobile Company, automobile dealers at Searcy, Arkansas, who bought it in good faith and for value in reliance upon the invoice and the Arkansas certificate of registration bearing Atkinson's name. The Baker Automobile Company in turn sold the car to Dobbins, who was likewise an innocent purchaser. Those facts were established by stipulation of the parties. It was held that the law of Tennessee governed as to the purported sale of the car, and that under the Tennessee law the title remained in the defrauded seller. Dobbins contended that the Martin Buick Company was estopped to deny that the Baker Automobile Company and subsequently himself acquired good title to the car by the *bona fide* purchase from Atkinson. It was held that whether such an estoppel is to be applied against the Martin Buick Company is to be determined by the law of Arkansas. The Court concluded as follows: That under the law of Arkansas the Martin Buick Company did not vest Atkinson with such indicia of title to the car as to estop the Martin Buick Company from setting up its own valid title against an innocent purchaser of Atkinson's nonexistent title.

Our authorities which we have been able to find, while not on all fours, seem to support the general rule. In *Jones v. Zollicoffer,* 4 N.C. 645, at 660, the Court said: "When a bill, therefore, is filed by one who has the legal title, but who comes into equity because he cannot be *completely* relieved at law, it is no defense for the defendant to plead that he is an innocent purchaser for a valuable consideration without notice, because the complainant is not seeking to disarm him at law, the defendant at best having but a *wooden* sword, incapable of protecting him against the assault of a legal claimant."

In *Lance v. Butler,* 135 N.C. 419, 47 S.E. 488, it was held that where one who was an agent for the sale of goods for another allowed them to be mixed with his stock of goods and then gave a mortgage on the entire stock, the mortgagee obtained no better title than the mortgagor had. See also *Bank v. Winder, supra.*

There is no plea of estoppel in the answer, nor evidence to support such plea, if it had been made. Therefore, if the jury finds from the evidence that the transaction between the plaintiff and Junghans was a cash sale and that Junghans paid the purchase price for the car with a worthless check, then no title passed to Junghans and the legal title remained in the plaintiff. In that event these interesting questions arise on the pleadings and the evidence, which are not before us for decision: First, are the defendants innocent purchasers for value and without notice, and if so, is that a defense against the plaintiff's legal title, according to the laws of

the State of Pennsylvania, where the defendants made their contract with Mozes Autos and received delivery of the car; second, if the defendants are innocent purchasers for value and without notice, and that is not under the laws of the State of Pennsylvania a defense against plaintiff's legal title, or if the defendants are not innocent purchasers for value and without notice, were Goldberg, Lee Motors and Mozes Autos, or either of them, innocent purchasers for value and without notice of this car, and if so, is it a defense against the plaintiff's legal title in the states or state where such sales, or any one such sale, was executed; third, if the defendants can prevail in any of these contentions, is it against the *lex fori* to enforce such a defense against plaintiff's legal title to the car? According to Junghans' testimony the executed sale of the car by him to Goldberg occurred in the District of Columbia, according to Goldberg's testimony in Maryland. The defendants allege in their answer that they are innocent purchasers for value and without notice. The burden is upon them to establish such defense. Inferences can be drawn from the evidence that neither defendants, nor Goldberg, nor Lee Motors, nor Mozes Autos are *bona fide* purchasers for value and without notice, therefore, a peremptory instruction that the defendants or Goldberg or Lee Motors or Mozes Autos were *bona fide* purchasers for value and without notice under the evidence in this case would be error. *Price v. Goodman, supra;* 11 Am. Jur., Conflict of Laws, Sec. 140; *Morris v. Tate,* 230 N.C. 29, 51 S.E. 2d 892.

The issues submitted to the jury are not determinative of the controversy between the parties and the judgment signed is erroneously entered. *Bank v. Broom Co.,* 188 N.C. 508, 125 S.E. 12; *Braswell v. Johnston,* 108 N.C. 150, 12 S.E. 911. For the reasons stated above the court's peremptory instruction to the jury on the first issue was error, and the plaintiff's Assignment of Error No. 6 to such charge is sustained.

Under the facts of this case, G.S., Sections 44-38.1, 47-20 and 47-23 have no application.

It is not necessary to consider the other assignments of error as to the admission of evidence, for they may not arise when the case is tried again.

The defendant Wood testified he received the car on 8 January, and sold it 10 January. The replevin bond is not in the record, but in the stipulation it is stated "defendants' replevin bond need not be printed as a part of the record on case on appeal." In paragraph 6 of the defendants' answer it is stated: "It is admitted that the defendants are in possession of said automobile and that they refuse to turn it over to the plaintiff."

There must be a new trial, and it is so ordered.

New trial.