## WAR FINANCE CORPORATION v. I. E. READY et al.

Middle Section. November 7, 1925.

No petition for Certiorari was filed.

1. **Evidence. Co-makers of a note are competent witnesses.**
   Co-makers of a note are competent witnesses to any fact within their knowledge. Section 5596, Shannon's Code.

2. **Principal and agent. Principal may revoke agency to sign note at will.**
   In an action on a note where the purported maker had given another party authority to sign his name to renewal note, held the principal may at any time revoke the authority in so far as it is related to the execution of future renewals, and this revocation may be effected in any manner showing his intention to withdraw his authority either expressly or by implication and the revocation becomes effective from the time the parties affected have notice of the revocation.

3. **Principal and agent. Notice of revocation of agent's authority.**
   Whatever is sufficient to put a party on inquiry is equivalent to actual notice.

4. **Notice. Notice of revocation of agency given to party affected, is sufficient even though agent has not been notified of revocation.**
   Notice given to a bank that agency to sign parties name to notes had been withdrawn is sufficient even though agent is not notified and bank cannot recover on a note signed thereafter.

5. Pleading.  Forgery may be shown under plea of non est factum.
Under a plea of non est factum an accommodation endorser may show that he not only did not sign the note but that he revoked the authority to sign his name, that is, under the plea of non est factum he may show that he had recalled his signature.

6. Evidence.  Evidence of revocation of agency to sign note held improperly excluded.
In an action on a note where evidence was offered and excluded showing that party had told bank he was not endorser on any notes save one, held improperly excluded as it tended to prove revocation of agency.

7. Bills and notes.  When fraud proved in inception of instrument holder has burden of proving he is bona-fide holder.
If the party primarily liable proves fraud or illegality in the inception of the instrument, or if, from the circumstances, a strong presumption of fraud is raised, the holder must then show that he is holder in due course, for a valuable consideration and without notice.

8. Appeal and error.  Assignment of error must be specific.
In order to be available in the appellate courts, an objection to evidence in the court below must specify the grounds of the objection.

9. Evidence.  Best evidence rule does not apply if fact to be proved is independent to writing.
If the essential fact to be proved is not the contents of a written instrument, but an independent fact to which the writing is merely collateral or which is merely an incident, there is no reason for the application of the best evidence rule.

10. Evidence.  Evidence tending to show attitude of parties held admissible.
In an action on a note where defendant denied he had given another authority to sign his name to the note evidence that defendant had said he had never refused to sign parties notes, held admissible as showing the attitude of parties and their previous relationship.

Appeal in Error from Circuit Court, Rutherford County; Hon. Jno. E. Richardson, Judge.

Reversed and remanded.

Wiseman & Knott, of Murfreesboro, for plaintiffs in error, Ready.

Cummings & Melton, of Woodbury, for defendant in error, Corporation.

CROWNOVER, J.  This action is not styled correctly.  It is here styled as it was in the court below.  It should be styled, I. E. Ready, et al., plaintiffs in error, v. War Finance Corporation, defendant in error, as a judgment was rendered against the defendant below, I. E. Ready, and he has appealed in error to this court.

This was an action by the War Finance Corporation to recover on a $1200 note, executed by T. B. Ready, W. T. Ready, and I. E. Ready, it being averred in the declaration that the three defendants had on June 1, 1923, executed said note to the First State Bank at Woodbury, who transferred same to the War Finance Corporation before maturity.

Judgment was taken by default against T. B. and W. T. Ready, but I. E. Ready pleaded non est factum.

The action was tried by the judge and a jury and resulted in a judgment against all three defendants, to which I. E. Ready excepted, appealed in error to this court, and has assigned the following errors:

1. There was no evidence to support the verdict.

2. The evidence does not, as a matter of law, establish authority in the parties to sign the name of defendant, I. E. Ready, to the note sued on.

3. Because the two witnesses, T. B. and W. T. Ready, being joint makers were incompetent to establish the authority to sign I. E. Ready's name to the note.

4. The court erred in excluding certain testimony to the effect that I. E. Ready had notified the bank that he had not signed any note, except the one for $120, before the execution of the $1200 note sued on.

5. The court erred in permitting certain testimony to go to the jury, over defendant's objection, that defendant, I. E. Ready, had signed prior renewals of the $1200 note, without producing said renewal notes or accounting for their absence.

6. The court erred in admitting certain evidence, over defendant's objection, that T. B. Ready had never refused to sign notes for I. E. Ready, as it was immaterial and tended to prejudice the jury against I. E. Ready.

The contention of the plaintiff below, War Finance Corporation, was that the three defendants below had executed a $1200 note to the First State Bank at Woodbury, on June 1, 1923, due in six months, and that that bank had transferred said note to the War Finance Corporation before maturity, and that it was the owner and lawful holder thereof. The first two named defendants did not contest liability and judgment was taken by default against them, but I. E. Ready pleaded non est factum and insisted that he had not signed the note nor authorized any one in the premises to bind him. However, it was contended by the plaintiff below that the original $1200 note had been executed to the First State Bank some seven to ten years ago, and that I. E. Ready had authorized W. T. Ready to sign his name to the original note, and that said note had been renewed every six months thereafter up to the present, and that I. E. Ready had signed several renewals of said note at different times, and at other times had authorized W. T. Ready to sign his name to said note, and had stated to T. B. Ready and W. T. Ready that at any time it might be inconvenient for them to see him in order to get his signature, it would be all right for W. T. Ready to sign his (I. E. Ready's) name to said note, as W. T. Ready could write a better hand than I. E. Ready, and the plaintiff insists that in pursuance to this general authority, W. T. Ready had

signed I. E. Ready's name to the note sued on, and for this reason I. E. Ready was liable on said note.

There were only three witnesses whose testimony was material to the transaction, that is, T. B. and W. T. Ready testified to the facts substantially in accordance with the complainant's contention below, while I. E. Ready denied that he had ever signed the $1200 note and denied that he had ever authorized T. B. or W. T. Ready to sign it for him.

We do not think that the first assignment of error is well taken, as there was material testimony submitted to the jury that I. E. Ready did authorize W. T. Ready to sign the original note and that he afterwards actually signed renewals of the same, and authorized W. T. Ready to sign his name to the note when it was not convenient to have him sign it. Both T. B. and W. T. Ready testified to these facts, hence, this assignment of error must be overruled.

By the second assignment of error it is urged that the evidence does not, as a matter of law, establish authority in the parties to sign the name of defendant, I. E. Ready, to the note sued on. That is, taking all the proof of the plaintiff, which consists only of the testimony of T. B. and W. T. Ready, the evidence does not arise to the dignity of establishing authority in the two Readys to sign the name of I. E. Ready to the note involved, because the note sued on is not traced from its origin and determined to be the renewal note about which the alleged conversation and authorization occurred at the time the alleged authority was given, and that the renewals were continued without change or alteration down to the note that was renewed on June 1, 1923, and sued on in this case.

The evidence of the plaintiff below shows that the $1200 note was executed by T. B. Ready, et al., to the First State Bank at Woodbury about seven or eight years ago, and that I. E. Ready's name was signed to said note, and that there was but one note of this amount executed to said bank by T. B., W. T., and I. E. Ready, that at the time this note was executed, T. B. Ready asked I. E. Ready to sign the note, and that I. E. Ready requested W. T. Ready to sign his name to the note as he could write a better hand, and that he authorized W. T. Ready to sign his name to the note at any time it was not convenient for him to see I. E. Ready, and that the note was renewed once every six months, and that I. E. Ready actually signed his own name to several renewals, and at other times W. T. Ready signed I. E. Ready's name in pursuance to the authorization. They testified that it was renewed every six months, so we think that the note sued on has been so traced and identified, and that there can be no reasonable doubt that it was a renewal of the original note. The contention that it is not shown by the evidence that the note was renewed for the same amount every time is not

borne out by the evidence. We think it is reasonable to infer from the evidence that it was renewed each time for the same amount, hence, we think this assignment of error is not well taken, and must, therefore, be overruled.

We do not think that the third assignment of error is well taken, as co-makers of the note are competent witnesses to any fact within their knowledge. The case of Harvey v. Sweasy, 4 Humph., 448, holding that a joint maker of a note is not a competent witness to prove that he was authorized to sign the name of his co-maker as agent, arose from the fact that a person interested in the issue to be tried was incompetent to testify, but this has been changed by statute, and a party in interest is now a competent witness. See Shannon's Code, section 5596. Were this not true, the defendant has waived this question in permitting the parties to testify without objection in the lower court. However, the assignment is not well taken and must be overruled.

The fourth assignment of error that the court erred in excluding certain testimony to the effect that I. E. Ready had notified the First State Bank that he had not signed any note except one for $120 before the execution of the $1200 note sued on, has given us much more concern.

The testimony offered but excluded from the jury is to the effect that when I. E. Ready was given notice by the bank that an $800 note was due, he went to the bank and told the cashier that he was not on a note as surety for T. B. Ready, and wanted him to see about it, as he had not signed any notes for some time, and denied liability on all notes except a $120 note; that the cashier said that he would see about it, and that this conversation was in the first part of the year before the present note was executed on June 1, 1923.

> "The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency." See Negotiable Instrument Statute, sec. 19, Shan. Code 3516a27.

The jury having found for the plaintiff below the effect of its verdict is that I. E. Ready had authorized W. T. Ready to sign his name to the original note, eight to ten years ago, and had actually signed several renewals, and had authorized him to sign his (I. E. Ready's) name to the renewals when not convenient to see him; hence, it is clear that it is not a forgery as contended by plaintiff in error. Having found that I. E. Ready authorized W. T. Ready to sign his name, he, therefore, to this extent, became his agent. Now, the question raised, is, whether this conversation with the cashier amounted to a revocation.

T. A. Vol. II—5.

It is clear that the principal may at any time revoke the authority in so far as it relates to the execution of future renewals, and this revocation may be effected in any manner showing his intention to withdraw his authority, either expressly or by implication and the revocation becomes effective from the time the parties affected have notice of the revocation. Whatever is sufficient to put a party on inquiry is equivalent to actual notice. See 1 Mechem on Agency (2 Ed.), secs. 615-616, 623; 2 C. J. 538 to 541; 1 Am. & Eng. Ency. of Law (2 Ed.), 1216 to 1220; Murdock v. Leath, 10 Heisk., 166.

"A revocation is not effected by the mere operation of the principal's will. That will must be expressed, and its expression must be brought to the attention of those whom it is desired to affect." See 1 Mechem on Agency (2 Ed.), sec. 613.

Ordinarily, where an agency is to continue until revoked, notice of revocation should be given to the agent, as an agent cannot be presumed to know, until notified in some manner of the uncertain and unforeseen act of the principal in terminating his authority (1 Mechem on Agency (2 Ed.), secs. 623 to 625), but in cases of this kind notice given to the bank, the party affected, would operate as notice to the agent and would amount to a revocation by implication in so far as the agent was concerned, provided the notice to the bank was sufficient.

Under a plea of non est factum an accommodation endorser may show that he not only did not sign the note but that he revoked the authority to sign his name, that is, under the plea of non est factum he may recall his signature. See Fox v. Cortner, 145 Tenn., 482.

In the case last cited the party's attorney wrote the holder of the note before acceptance that his name was a forgery, and denied liability. It later developed that it was not a forgery, but our Supreme Court held that the notice amounted to a revocation, and that defense was available under a plea of non est factum.

"Where the circumstances are controverted, or where notice is sought to be inferred as a fact from circumstances, and more than one inference can reasonably be drawn from the facts, the question is for the jury; they must determine as a question of fact whether the party claiming against the principal did or didn't have notice of revocation; and if there be some evidence of this fact, it must be submitted to the jury. Where, however, the facts are undisputed and the only question is whether they amount to constructive notice or are sufficient to put the party upon inquiry, the question is not for the jury but for the court." See 1 Mechem on Agency (2 Ed.), sec. 638; 21 Am. & Eng. Ency. of Law (2 Ed.), 589; 2 C. J. 962, sec. 732.

No general rule can be formulated which will govern in all cases the sufficiency of the facts or circumstances of notice that will put a party upon inquiry, but each case must rest on its own facts.

"Where such facts or circumstances are known to a person in relation to a matter in which he is interested as are sufficient to make it his duty as an honest and prudent man to inquire, concerning the rights of other persons in the same matter, and the course of inquiry thus suggested would, if followed with due diligence, lead to a discovery of rights in conflict with his own, the general rule is that he will be held chargeable with notice of all that he might thus have discovered, and will not be heard to say that he did not actually know of the fact or claim in question. Means of knowledge with the duty of using them are deemed equivalent to knowledge itself, and passive good faith will not serve to excuse wilful ignorance." 21 Am. & Eng. Ency. of Law (2 Ed.), 584.

"But when from the uncontroverted facts in evidence it appears that circumstances existed of which the party sought to be charged had knowledge or information sufficient to affect his conscience, and thereby put him upon inquiry, which, if followed with reasonable diligence, would necessarily have led him to actual knowledge of the particular fact, and his failure to make the inquiry is not satisfactorily explained, he will be held chargeable with the knowledge which he might thus have acquired, and will not be allowed to say that he did not actually know that the fact existed. His knowledge of the circumstances being sufficient to make it his duty to inquire and to render any inaction on his part unconscientious, his failure to pursue the path of duty is no defense or excuse. Under such circumstances it is said that the presumption of notice is conclusive." 21 Am. & Eng. Ency. of Law (2 Ed.), 590.

We think that the conversation with the cashier was sufficient to put his bank on notice that he had not signed any note except the $120 note, and that he denied liability on all notes except that one. This was before the $1200 note sued on was executed, and naturally excluded the idea of agency, or at least was notice that Ready was contesting the authority to sign his name to the note; hence, the bank without more was not warranted in taking renewal note upon the assumption of a renewal authorization.

However, it is contended by the defendant in error that it is a holder in due course for a valuable consideration without notice, and this is based upon an agreement set out in the record, which is as follows:

"It was agreed by the defendant, I. E. Ready, that the War Finance Corporation, the plaintiff, was the holder of the note sued on in this cause, and that said note had been transferred

to it by the First State Bank of Woodbury before the maturity thereof.''

It will thus be seen that this agreement does not at all cover the insistence by the defendant in error.

However, it is further insisted that under the Negotiable Instrument Statute, every holder of a negotiable paper is deemed prima facie to be a holder in due course, and that a holder in due course holds the instrument free from any defective title of prior parties, and from defenses available to prior parties amongst themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.

Ordinarily, this is true, but it is provided by another section (Shannon's Code, sec. 3516a67) that:

"Every holder is deemed prima facie to be a holder in due course, but when it is shown that the title of any person, who has negotiated the instrument, was defective, the burden is on the holder to prove that he, or some person, under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound in the instrument prior to the acquisition of such defective title.''

"If the party primarily liable proves fraud or illegality in the inception of the instrument, or if, from the circumstances, a strong presumption of fraud is raised, the holder must then show that he acquired bona fide for value under circumstances creating no presumption that he knew the facts which impeached its validity.'' See Bank v. Chatfield, 118 Tenn., 481-493.

This question was directly raised in the case of Fox v. Cortner, 145 Tenn., 496, and was again re-affirmed in the case of Young v. Harris-Cortner Company, 268 S. W., 1120. The Supreme Court held that where fraud or illegality was shown in the inception of the instrument then the burden of proof shifted to the holder of the note to show he was the holder in due course, for a valuable consideration and without notice.

The evidence in this case fails to show that the defendant in error was a holder in due course, for a valuable consideration without notice. Hence, it results that any defense that the plaintiff in error could have made against the First State Bank can be set up against the defendant in error. So, we hold that the evidence should have been submitted to the jury, and if no evidence was introduced in rebuttal, then the question became one for the court, but if other testimony controverting the revocation had been introduced, then it became a question for the jury.

It is further insisted, that in any event, the plaintiff in error is liable on the old renewal notes executed prior to the revocation, on the principle that the renewal of a note with forged endorse-

ments does not discharge the parties to the original as it is not in fact a novation (Bank v. Buchanan, 87 Tenn., 32) and that, therefore, he is liable for the original consideration. We do not see that this proposition can help plaintiff in error in this action, for several reasons—one is that there is no proof that the defendant in error (War Finance Corporation) was the holder of the original note or any renewals, and for another reason, this action was instituted by the defendant in error (not by the First State Bank of Woodbury) to recover on this $1200 note executed on June 1, 1923, and not for the original consideration. That is a matter that can only be determined in another suit.

It results that this assignment of error is well taken and must be sustained.

The fifth assignment of error was that the court erred in admitting certain testimony, over defendant's objection, to the effect that defendant, I. E. Ready, had signed prior renewals of the $1200 note without producing said renewal notes or accounting for their absence.

Plaintiff in error insisted that the notes, themselves, were the best evidence of the fact that I. E. Ready had signed them and that secondary evidence could not be admitted without accounting for the absence of the originals. It is insisted that before a party can be permitted to introduce secondary evidence of the contents of a written instrument, satisfactory proof must be made of its existence and proper execution, and that it was delivered and accepted. In other words, it is necessary to prove that the instrument was genuine and that the same requirements must be complied with before introducing secondary evidence of the contents as of other instruments beyond the jurisdiction of the court; while the defendant in error insists that the objection is not sound for the reason that the contents of the instruments were not attempted to be proven, but that it was sought only to prove the mere fact that I. E. Ready had signed several renewals.

This assignment is not well taken because the record shows that defendant's objection, at the time the evidence was introduced, was not sufficient, in that, it did not specify the grounds of the objection. In order to be available in the appellate courts, an objection to evidence in the court below must specify the grounds of the objection. The reason for this rule is that the opposition party may be given the opportunity to act advisedly, and not be entrapped into error after it is too late to remedy the matter by introducing new evidence, which may be done if specific objection is made. See Garner v. State, 5 Lea, 214; Powers v. McKenzie, 90 Tenn., 167; 5 Michie's Tenn. Ency. Dig. 165; 360.

However, if the essential fact to be proved is not the contents of a written instrument, but an independent fact to which the writing

is merely collateral or which is merely an incident, there is no reason for the application of the best evidence rule. See Jones on Evidence in Civil Cases (3 Ed.), sec. 203; 2 Wigmore on Evidence (1 Ed.), sec. 1253; 22 C. J., 978, sec. 1224.

It results that this assignment of error must be overruled.

The sixth assignment of error was that the court erred in admitting certain evidence, over defendant's objection, that T. B. Ready had never refused to sign notes for I. E. Ready on the ground that it was immaterial and tended to prejudice the jury against I. E. Ready. This testimony was admitted for the purpose of showing the attitude of the parties, their previous dealings and their relationship, and we think that for this purpose it was competent to shed light upon the issues involved. Therefore, we think this assignment is not well taken.

This assignment is subject to the same criticism as the preceding one, because the objection to this testimony specifies no grounds of objection in the court below; hence, this assignment of error must be overruled.

The fourth assignment of error having been sustained, it results that the judgment of the trial court must be reversed and the case will be remanded to the Circuit Court of Rutherford county for a new trial. The cost of the appeal is adjudged against defendant in error, War Finance Corporation, for which execution may issue. The cost that accrued in the lower court will await the final termination of the case.

Faw, P. J., and DeWitt, J., concur.