## SHAEFFER et al. v. FRASER–BRACE ENGINEERING CO.

### Civ. A. No. 218.

United States District Court
Northeastern D. Tennessee, N. D.

April 11, 1952.

Thos. H. Rogan, Rogersville, Tenn., for plaintiffs.

Joseph B. Roberts and Frazier, Roberts & Weill, Chattanooga, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

Defendant was the contract engineer which constructed the munitions plant known as Holston Ordnance Works, at Kingsport, Tennessee, under a cost-plus-fixed-fee contract with the United States Government. Plaintiffs were employees of the defendant. The action was commenced by a large number of employees to recover unpaid overtime wages allegedly due them under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The action was later dropped as to all except 29 employees. Those remaining, as alleged in plaintiff's bill of particulars, fall roughly into four classes, namely, inspectors, checkers, an expediter, and unloaders, or unloaders and loaders.

Defendant for answer relies on three defenses. The first is that the plaintiffs were employees of the United States Government. The second is based upon the Portal-to-Portal Act, 29 U.S.C.A. § 251 et seq. The third is that plaintiffs were not engaged in occupations that brought them within the coverage of the Fair Labor Standards Act.

The case was heard on its merits on November 29 and November 30, 1948. Since that time the Supreme Court has handed down its decision in the case of Powell v. U. S. Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017. In proceedings subsequent to the hearing on the merits, and because of the Powell decision, defendant has relaxed its insistence on the first defense. It has, however, continued its reliance on the second and third defenses.

■■ In support of its defense under the Portal-to-Portal Act, defendant has filed certain exhibits intended to show that it relied on a ruling of the War Department to the effect that employees engaged in construction work at Holston Ordnance Works were not within the coverage of the Fair Labor Standards Act. Plaintiff objected to these Exhibits for the reason that they were copies and not the original letters. It was explained, however, that defendant was involved in similar litigation elsewhere and from necessity had to rely on copies at one place or the other. That they are true copies is sustained by evidence contained in the file, including direct testimony of defendant's witnesses and answers to interrogatories submitted pursuant to stipulation. Under Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the Court may look to the most liberal rule of admissibility, as between local and federal. The Tennessee rule as to admissibility of secondary evidence is probably the more liberal as to the evidence offered here. Under that rule, secondary evidence is admissible where production of the primary evidence is inconvenient or impossible, or where the evidence is collateral to the fact in issue. State ex rel. Stewart v. Follis, 140 Tenn. 513, 205 S.W. 444; War Finance Corp. v. Ready, 2 Tenn.App. 61. Under the circumstances, the Court, accordingly, holds that the copies are admissible.

■ Exhibits include a ' letter from Elvin R. Gates, representing the War Department, in which the writer quotes from a communication from the office of the Chief of Engineers, addressed to the writer. The quotation (from Exhibit 12) is as follows:

"It is the position of the War Department that the Fair Labor Standards Act does not apply to Architect-Engineering or construction. Hence, it is not considered necessary to present the matter to the Department of Labor for reconsideration of the views expressed by its field representative who ruled as to the liability under the Wage and Hour Act of Charles T. Main for overtime compensation to his employees, employed in the Boston office. Should the Cost-Plus-A-Fixed-Fee Architect-Engineer desire a protective letter, such as was sent to the Architect-Engineer for the Ashford General Hospital, as set forth in the first indorsement hereon, this office will so oblige."

It appears from the depositions of Robert P. Gardner and Harry Englander of the managerial staff of defendant in the construction of Holston Ordnance Works that in its wage and salary policy with respect to the plaintiffs, it relied in good faith on the foregoing ruling or interpretation of the War Department, as contained in Exhibit 12 and accompanying exhibits, the clear import being that plaintiffs were not within the coverage of the Fair Labor Standards Act.

This reliance had a dual aspect. The ruling was to the effect that the Fair Labor Standards Act was not applicable. Defendant relied on this interpretation. The correspondence on the subject contained the assurance that if defendant, nevertheless, should be required to conform its wage and salary policy to the Fair Labor Standards Act, then it would be reimbursed for any expenditure made in conformity with such requirement. Defendant has relied on this assurance, the result being that defendant had nothing to lose either way, hence had no selfish motive in not applying the Fair Labor Standards Act. It, there-

fore, does not seem to the Court that the existence of this assurance in any way destroyed the primary reliance of defendant on the inapplicability of the Fair Labor Standards Act as to these plaintiffs. While the Court does not rest its decision entirely upon this point, it is, nevertheless, of the opinion that a defense has been made out under the Portal-to-Portal Act and that the action of the plaintiffs is for that reason barred.

Because it presents a more conclusive result, the Court is interested chiefly in the third defense, namely, that plaintiffs were not engaged in such occupations as brought them within the purview of the Fair Labor Standards Act.

It is conceded that they worked in excess of 40 hours per week and that they were not paid one and one-half times their regular rate for the time in excess of 40 hours. Plaintiffs do not insist that they were engaged in the production of goods for commerce, or in occupations necessary thereto. It is their position that they were engaged in commerce, or in occupations so closely related to Interstate Commerce as to be an essential part thereof.

As to those who alleged that they were engaged in unloading incoming cargo and in loading outgoing shipments, no proof was introduced by the plaintiffs at the hearing, consequently no case has been made out as to them. What proof there is on the subject is contained in the depositions of Robert P. Gardner and Harry Englander, mentioned above. From this proof it appears that employees at the Holston Ordnance Works were divided into two classes, manual and nonmanual. Loaders were included in the class of manual laborers. Manual employees were beneficiaries of the contract between defendant and the labor union which represented them. Under this contract the loaders were paid one and one-half times their regular rate for all overtime.

■ The proof made in the case at the hearing is limited to twelve of the named plaintiffs. Of those twelve, five were classed as inspectors, one as an expediter, and six as materials checkers.

Under its contract with the Government, defendant was furnished by the Government with a salary schedule for nonmanual employees. Payrolls were made out by defendant and submitted to a Government pre-audit section for audit and approval. Thereafter, payments of salaries to the nonmanual employees was made by the defendant. The nonmanual employees, also, were individual contract employees, each being paid what his contract called for. Each was paid straight time for any overtime he worked.

Much of the machinery and materials used in the construction of Holston Ordnance Works came to the project site from points outside of the State of Tennessee. Machinery consisted of both heavy and light machines, normally to be found in use on a large construction project, such as this was. Materials used were varied and of immense volume. Some of the materials were unloaded at the project site and some at nearby receiving docks. Before the construction machinery went into use it was inspected by the plaintiff inspectors, who prepared a report on each unit of equipment as to its condition and as to its estimated value. Some of this inspection was done before the units were unloaded from trucks, or freight cars, and some of it was done after the unloading. Inspection was not required as a necessary preliminary to the unloading operation, but had an entirely different relation and function, as will hereinafter appear. The checkers were concerned with materials which were used in the structures erected at the project site. Checking of materials was done in relation to orders for such materials and was intended to determine whether the materials received conformed to purchase orders as to both quantity and quality. Some of this checking was done prior to unloading and some of it subsequent to unloading of the materials at the receiving docks, or the project site. As in the case of inspection of equipment, the checking of materials was in no manner prerequisite to the unloading. Instead, as will be seen, it served an entirely different purpose.

The one expediter included among the plaintiffs as to whom proof was introduced, traveled about the country, contacting dealers and manufacturers who had been given purchase orders for equipment or materials. His work was concerned with expediting the filling of purchase orders by the vendors. He was not a promoter or salesman. Nor was he an original buyer. Nor was he a buyer for the defendant. His function was to remind vendors of orders which had been submitted to them and to request that they hurry up shipment of the ordered materials. His work added nothing to the stream of goods in commerce. The result of his work was that goods destined to be shipped anyhow may, in some cases, have been shipped a few days earlier than otherwise would have been done.

The purpose served by the work of the inspectors and material checkers had no relation to the movement of goods in interstate commerce. Their work was in the nature of inventory. They furnished defendant with records as to all incoming materials and equipment. As the work was being done on a cost-plus-fixed-fee basis, it was necessary that defendant have complete data as to all materials and machinery bought or received by it. Defendant was reimbursed for every item of authorized expenditure, and inspecting and checking of materials related to this matter of records and reimbursement. It served no other function.

On the foregoing statement of facts, the Court is of the opinion that none of the twelve plaintiffs as to whom a record of proof was made out, engaged in activities so closely related to interstate commerce as to be a necessary part thereof. They were employed by an engineering and construction company and their work related to the reimbursement feature of the construction. Broadly speaking, they were engaged in work of original construction, and any connection they had with the movement of goods was purely incidental. It is well settled that employees engaged solely in original construction do not come within the coverage of the Fair Labor

Standards Act. Murphey v. Reed, 335 U.S. 865, 69 S.Ct. 105, 93 L.Ed. 410; Cooper v. Rust Engineering Co., 6 Cir., 181 F.2d 107; Spencer v. Porter, 8 Cir., 183 F.2d 445; Selby v. J. A. Jones Construction Co., 6 Cir., 175 F.2d 143.

Cases cited by plaintiffs in support of their insistence that they were engaged in work essential to interstate commerce are distinguishable on the facts from the present case. Where checking of goods and related activities are shown to have been an essential step in the movement of interstate goods, employees so engaged have been held to be within the coverage of the Fair Labor Standards Act. West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582; McComb v. Blue Star Auto Stores, Inc., 7 Cir., 164 F.2d 329.

 In Walling v. Consumers Co., 7 Cir., 149 F.2d 626, at page 629, the Court said: "To be engaged in commerce within the meaning of that phrase, an employee must be actually engaged in the movement of commerce, or the services he performs must be so closely related thereto as to be for all practical purposes an essential part thereof. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. And in that connection closeness depends upon the essentiality and indispensability of the particular work or services performed to the actual movement of commerce." As appears from the factual statement hereinabove, the activities of these twelve plaintiffs were neither indispensable nor essential to the actual movement of commerce. As heretofore stated, the inspecting and checking done by plaintiffs was a prerequisite to release of equipment and materials into the work of construction. Their work had to be done before the equipment and materials disappeared into the indistinguishable mass of things. That was the essential and indispensable requirement of their work. Whether they did their work before or after unloading of equipment and materials, was a matter of convenience. So far as convenience was served, inspecting and checking could as well have been done after unloading as before.

The expediter included among these plaintiffs may have induced shipment of goods a few days earlier than they otherwise would have been shipped, but he was an expediter of construction and not of commerce. The effect of his activities on commerce was incidental to his main activity and interest. His activity received its character from the work project to which it related, not from that to which it may have been an incident. Fruco Construction Co. v. McClelland, 8 Cir., 192 F.2d 241.

It results that none of the plaintiffs is entitled to a recovery. The action as to all of the plaintiffs, accordingly, will be dismissed.

Let an appropriate order be prepared.