AMERICAN EXCHANGE NATIONAL BANK v. HELEN M. WINDER, JOHN C. WINDER AND WILLIAM T. WINDER.

(Filed 27 November, 1929.)

**1. Estoppel C a—Distinction between equitable and legal estoppels in pais.**

Equitable and legal estoppels agree in that they preclude a person from showing the truth in an individual case; but legal estoppel shuts out the equity and justice of the individual case in its operation, while equitable estoppel prevents a person from asserting his rights under a technical rule of law when his conduct has been such as in good conscience should prevent him from alleging and proving the truth.

**2. Same—Intent to mislead is not essential to equitable estoppel.**

The intent to mislead is not an essential element in the doctrine of equitable estoppel *in pais,* nor is fraud and representation in all cases requisite, and the acts, conduct, and even silence of the party sought to be estopped may be adequate.

**3. Same—Where one clothes another with indicia of title to personalty he is estopped as against innocent third person.**

Where the owner of personal property clothes another with the *indicia* of title, or allows him to appear as the owner, or as having the power of disposition, an innocent third person dealing with the apparent owner, and who has been deprived of his rights thereby, will be protected under the equitable doctrine of estoppel *in pais.*

**4. Same—In this case held: doctrine of equitable estoppel applies.**

Where one having an inherited interest in diamonds gives the possession of the diamonds to his brother, and permits the wife of the latter to wear them as her own for years without claiming them, and after a separation from her husband she hypothecates them at a bank for the security of her personal note given for borrowed money, the evidence is sufficient to be submitted to the jury as to whether the bank in lending her the money was reasonable in relying upon or inferring the fact that all the diamonds were her own, and estop her brother-in-law from showing to the contrary in an action by the bank to subject the diamonds to the payment of her note.

Connor, J., dissents.

APPEAL by William T. Winder from *Clement, J.,* at April Term, 1929, of GUILFORD. No error.

The plaintiff brought suit· on two promissory notes under seal, payable to its order, executed by the defendant, Helen M. Winder. The first was in the sum of $3,335.05, was dated 16 October, 1927, and was payable 28 November, 1927; the second was given for $690, was dated 26 December, 1927, and was payable thirty days after date. The maker of the notes authorized the payee to hold all securities put up for payment as security for all her indebtedness to the payee whether incurred before or after the execution of the notes. She filed an answer to the complaint, alleging that the original debt of $5,000, contracted in 1920, was that of her husband, John C. Winder, and that he procured her endorsement of a note in this amount and obtained from her four diamonds which he deposited with the plaintiff as collateral security. She alleged that her husband had given her one of the diamonds as an engagement ring and had given her the others some time after the death of his mother; also that in May, 1926, her husband executed a deed of separation admitting her title to the diamonds and agreeing to pay the amount of the note, but upon his failure or refusal to make payment she was forced to renew the note. When the diamonds were pledged there was due the bank $1,800, but an additional loan was made increasing the debt to $5,000, which was subsequently reduced to $3,335. Mrs. Winder admits that as collateral security for the note of $690, which was given for her individual debt, she deposited with the plaintiff her diamond pendant. The answer to the first issue is made up of these two sums. She asks that all the stones be sold under an order of court, that the proceeds be applied to the payment of her notes, and that the surplus, if any, be paid to her.

John C. Winder filed no pleading. William T. Winder filed an answer admitting the execution of the notes and the deposit of the diamonds with the plaintiff; but he alleged that he owns a one-half interest in the pendant and in all the other diamonds except Mrs. Winder's wedding ring, and that his title is not and cannot be affected by her disposition of them.

The issues were answered as follows:

1. What amount, if any, is the plaintiff entitled to recover of the defendant, Helen M. Winder? Answer: $4,025.05, with interest on $3,335.05 from 28 December, 1927, and interest on $690 from 25 January, 1928.

2. Did the defendants, Helen Winder and John Winder pledge with the plaintiff as collateral security for the debt sued on, the property described in the complaint? Answer: Yes.

3. Is the defendant, William T. Winder, the half owner of any of said property, and if so, which? Answer: Yes, all diamonds except Helen Winder's engagement diamond.

4. If so, is the said William T. Winder estopped as against the plaintiff in this cause from asserting any claim thereto? Answer: Yes.

Judgment was rendered for the plaintiff, and William T. Winder appealed.

*Brooks, Parker, Smith & Wharton for plaintiff.*
*King, Sapp & King for William T. Winder.*

ADAMS, J. The fundamental question is whether there is enough evidence to sustain the jury's answer to the fourth issue; for if the appellant is estopped as against the plaintiff to assert title to the property in controversy only a few of the exceptions need be considered. The answer may be found in the doctrine of estoppel.

We are not concerned with estoppel by record or by writing, but with estoppel *in pais*—i. e., equitable estoppel. While equitable estoppels arise from facts which are matters *in pais,* there is an essential and marked distinction between them and legal estoppels *in pais.* The two agree in that they preclude a person from showing the truth in an individual case; but while legal estoppel, in shutting out the truth, shuts out also the equity and justice of the individual case, equitable estoppel, which is available in an action at law, is admitted on the opposite ground of preventing a person from asserting his rights under a technical rule of law when his conduct has been such as in good conscience should prevent him from alleging and proving the truth. Eaton's Equity, 2 ed., 147, sec. 60; *Dickerson v. Colgrove,* 100 U. S., 578, 25 Law Ed., 618.

Equitable estoppel is defined as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy. This estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." 21 C. J., 1113, sec. 116; *Boddie v. Bond,* 154 N. C., 359. Neither fraud nor representation in express words is in all cases a requisite. Conduct, acts, or even silence may be adequate. Nor is it necessary that the conduct

of the person estopped be prompted or characterized by an intention or expectation that it will be acted upon by the other party. His conduct will be effective as an estoppel if the circumstances are such as may lead to the natural and probable conclusion that it will be acted upon as implying an existing fact. Pomeroy says there are conditions in which it is impossible to ascribe to the party estopped any intention or even expectation that his conduct will be acted upon by one who afterwards claims and is entitled to the benefit of the estoppel; that it would be misleading to say there must always be an intention that any particular conduct should be acted upon; and that while such intention must sometimes exist there are estoppels in which no intention can exist. If representations, whether by words, conduct, or silence, are such that all persons interested in the subject have a right to rely upon them, their truth cannot be denied by the party making them against any one who trusted to them and in good faith acted upon them. Pomeroy's 2 Equity Jurisprudence, secs. 805, 811. In *Armfield v. Moore,* 44 N. C., 158, *Pearson, J.,* remarked that this principle lies at the foundation of all fair dealing between man and man, and that without it, it would be impossible to administer the law as a system. The three requisites are that the defendant knows his title, that the plaintiff does not know it, and that, relying upon the defendant's representations or silence, the plaintiff is thereby deceived. *Holmes v. Crowell,* 73 N. C., 613; *Exum v. Cogdell,* 74 N. C., 139.

It is important to remember that the owner of personal property will not be estopped merely by entrusting its possession to another. Possession or control of the property is not of itself sufficient for this purpose. If it were, as was said in *Forristal v. McDonald,* 9 Cam., S. C., 9, no man could safely leave his watch with a watchmaker for repairs. See 7 A. L. R., 676 N. But an estoppel will arise against the real owner when he clothes the person assuming to dispose of the property with the apparent title to it, and the person setting up the estoppel, relying upon the fact, parts with something of value or extends credit on the faith of such apparent ownership. 10 R. C. L., 777, sec. 91. The controlling principle is this: Where the owner of personal property clothes another with the *indicia* of title, or allows him to appear as the owner, or as having the power of disposition, an innocent third party dealing with the apparent owner will be protected. *Drew v. Kimball,* 80 A. D., 163; *Guffey v. O'Reilley,* 57 A. R., 424; *Velsian v. Lewis,* 3 A. S. R., 184; *Hill v. Wand,* 27 A. S. R., 288; *First Nat. Bank v. Kissaire,* 132 A. S. R., 644; *O'Connor v. Clark,* 29 L. R. A., 607.

Let us apply these principles to the evidence. The appellant, William Winder, claims to be the owner of a one-half interest in all the diamonds

except the one in the wedding ring. He and John C. Winder are brothers, the only children of Florence Tucker Winder, who died 2 May, 1916. They did not divide the jewelry received from her estate. The appellant testified: "I agreed to let John and Helen use the jewelry until such time as I desired to have my part. I say use it, wear it, in other words, take care of the jewelry until I wanted my portion. I did not authorize them to pledge it in any way as security." John C. Winder and his wife then lived in Raleigh; afterwards they moved to Greensboro. William was in "another part of the country." From time to time he came to North Carolina, and in 1923 and 1924 lived in Greensboro. He knew Mrs. Winder wore the jewels, and he made no objection to her "wearing and using them." Again he went away. "On a stretch," he said, "I never heard from my brother in six years. We have never been very close together because there was so much difference in our ages, and we never had a home." He did not demand the jewels or request a division of them for about twelve years, and then only after hearing that John C. Winder and his wife had separated. The uncontradicted evidence is that Mrs. Winder wore the diamonds "all the time," "as if they were hers," and that the officers of the bank knew she had worn them for several years.

The evidence unquestionably tends to show that John and William Winder had clothed Mrs. Winder with the *indicia* of title to the diamonds and had allowed her to appear as the owner with full power of disposition. Upon this theory it was of sufficient probative force to be considered by the jury on the question of estoppel, although the rule generally applied in transactions of this character is that which declares that when one of two innocent persons must suffer for the wrong of another, he who has armed the wrongdoer must suffer the loss. 25 L. R. A. (N. S.), 770 N.

Several exceptions related to the trial court's alleged disregard of the mandate (C. S., 564) that the judge shall state the evidence and apply the law; but we do not regard the charge as subject to this criticism. The remaining exceptions, which have been examined in their relation to the whole record, point out no error which requires another trial.

No error.

CONNOR, J., dissents.