## J. E. HAWKINS v. M & J FINANCE CORPORATION.

(Filed 23 September, 1953.)

**1. Estoppel § 5—**

The doctrine of estoppel by conduct rests upon principles of equity, and is designed to aid the law in the administration of justice by precluding a party from asserting legal rights which in equity and good conscience he should not be allowed to assert.

**2. Same—Elements of estoppel by conduct.**

Equitable estoppel arises upon conduct of one party which amounts to a false representation or concealment of material facts or conduct reasonably calculated to mislead the other party as to the true facts, in respect to which facts the other party lacks knowledge or the means of ascertaining the truth; with intention or expectation that such conduct shall be acted on by the other party or conduct calculated to induce a reasonably prudent person to believe such conduct is intended or expected to be relied upon, and which is relied upon by the other party and induces him to change his position to his prejudice.

**3. Sales § 12: Estoppel § 6e—**

The owner of personal property will not be estopped to assert his title by merely entrusting its possession and control to another.

**4. Same: Bailment § 7—**

A bailor of personal property for sale by the bailee is not estopped to assert his title as against a third person merely because he entrusts the possession of the property to the bailee unless he further clothes the bailee with *indicia* of ownership, even though such third person be an innocent purchaser or encumbrancer.

**5. Principal and Agent § 7a: Sales § 12—**

An agent authorized to sell property of his principal has no implied authority to mortgage the property.

**6. Estoppel § 5: Automobiles § 5—Certificates of title endorsed in blank are not indicia of title so as to estop owner.**

The owner of motor vehicles delivered them to a dealer for sale. Later he delivered to the dealer the certificates of title signed by him in blank, with authority to a notary public, upon the sale of the vehicles by the dealer, to notarize the instruments in his absence and hold the purchase price for him. Thereafter the dealer mortgaged the vehicles, representing himself to be the owner, and showed the mortgagee the blank endorsements of title. *Held:* In the true owner's action to recover the vehicles, the Mortgagee may not rely upon estoppel by conduct to preclude the owner from asserting his title, since under our registration statutes the endorsements of the titles in blank were not *indicia* of title in the dealer, but to the contrary were sufficient to give the mortgagee constructive notice of the dealer's want of title. G.S. 20-56, G.S. 20-57, G.S. 20-72 (b), G.S. 20-73, G.S. 20-78.

**7. Automobiles § 5—**

Our statutes regulating the registration of motor vehicles are designed to facilitate the enforcement of highway safety statutes, minimize the hazards of theft and provide safeguards against fraud and imposition, and they are mandatory and not merely directory and may not be circumvented or disregarded at the will or pleasure of the purchaser or seller of a motor vehicle.

**8. Same: Customs and Usages § 1—**

The custom of used car dealers to accept a blank endorsement of the title by the owner and to transfer title directly to a purchaser upon an anonymous notarization, is violative of the letter and spirit of our motor vehicle registration statutes and may not be asserted as ground for equitable estoppel.

**9. Estoppel § 11c—**

Where only one inference can reasonably be drawn from the undisputed facts, the question of estoppel is one of law for the court and the court may direct a verdict upon the issue.

BARNHILL, J., dissents.

APPEAL by defendant from *Bone, J.,* and a jury, at October Civil Term, 1952, of DURHAM.

Civil action in claim and delivery involving question of estoppel.

The plaintiff, being the owner of a Plymouth sedan and a Chevrolet truck which he desired to sell, delivered the vehicles to one George A. Thorne, a used-car dealer in Durham, under an agreement whereby Thorne was to sell the vehicles for the plaintiff, who resides at Cedar Grove in Orange County, which is about 25 miles from the City of Durham.

The certificates of title issued to the plaintiff by the North Carolina Department of Motor Vehicles were not delivered to Thorne at the time the vehicles were left with him. However, after the vehicles had been

on the used car lot two or three months, Thorne asked the plaintiff to leave the certificates with someone in Durham so as to save him the drive to plaintiff's home when they should be needed to complete the sales. In response to this request, the plaintiff brought the certificates to Thorne's place of business and delivered them to him, with the assignment forms on the reverse side endorsed in blank. To facilitate completion of the assignments, the plaintiff arranged with a notary friend, one Sears, who was employed at a nearby tobacco warehouse, to fill in the blanks, notarize the assignments, and receive and hold for him the purchase money when the vehicle should be sold and the certificates presented by Thorne.

No sale was made by Thorne, and notary Sears was not called upon to complete the assignments. Instead, Thorne, on 27 February, 1951, about three weeks after getting possession of the certificates of title, without the knowledge or consent of the plaintiff, wrongfully mortgaged the vehicles to the defendant Finance Company to secure loans on the car and truck in the respective amounts of $700 and $500 (later paid down to $500 and $300 respectively). The plaintiff received no consideration as a result of the mortgage. At the time it was made Thorne represented himself as the owner of the vehicles and exhibited both of them to Robert Richardson, manager of the defendant Finance Company, and also left with him the two certificates of title signed in blank by the plaintiff. The mortgage was filed for registration the day following its execution and in due course was recorded in the Public Registry of Durham County.

In December, 1951, the plaintiff, learning of Thorne's insolvency, visited the used car lot and took possession of the Chevrolet truck, but was unable to locate the Plymouth sedan or the certificate of title to either vehicle.

In January, 1952, the plaintiff, having learned that the defendant Finance Company was in possession of the Plymouth and the two certificates of title, made demand therefor, and on refusal instituted this action in claim and delivery to obtain possession thereof. The defendant, after replevying and retaining possession of the seized property, filed answer denying the material allegations of the complaint, and by further defense and counterclaim alleged the pertinent facts in respect to the mortgage loan and prayed judgment that the plaintiff be not permitted to claim title to the two vehicles as against the defendant's mortgage thereon.

At the trial evidence was offered substantially in accord with the foregoing statement. Also, in amplification of the facts respecting the plaintiff's delivery of the certificates of title to used car dealer Thorne, the plaintiff testified on cross-examination: "I signed them (the assignment blanks on the reverse side of the certificates) and delivered them (the certificates of title) to Mr. Thorne in his place of business. . . . No one was present except Thorne. . . . I left with Mr. Sears authority to

notarize the certificates of title and put his seal on them whenever Mr. Thorne asked him to notarize them. . . . I left them with Mr. Thorne . . . and told him that whenever he sold the cars Mr. Sears would notarize them and he could leave the money with Mr. Sears."

Other relevant facts appear in the opinion.

The jury, in response to peremptory instructions of the trial court, found for their verdict that the plaintiff was the owner of the two motor vehicles free of the defendant's chattel mortgage.

From judgment entered on the verdict, the defendant appeals, assigning errors.

*White & White for plaintiff, appellee.*

*L. H. Mount, Victor S. Bryant, Robert I. Lipton, and Victor S. Bryant, Jr., for defendant, appellant.*

JOHNSON, J.  The defendant insists that the plaintiff's conduct in delivering his certificates of title to used-car dealer Thorne, endorsed in blank, was sufficient, when considered with the rest of the evidence adduced below, to estop the plaintiff from asserting title to the two motor vehicles as against the chattel mortgage made by Thorne to the defendant Finance Company.

Decision here turns on whether the trial court erred in failing to submit to the jury this question of estoppel.

The doctrine of estoppel by conduct—estoppel *in pais*—rests upon principles of equity.  It is designed to aid the law in the administration of justice when without its aid injustice would result, the theory being that it would be against the principles of equity and good conscience to permit a party against whom the estoppel is asserted to avail himself of what must otherwise be his undisputed legal rights.  *Long v. Trantham,* 226 N.C. 510, 39 S.E. 2d 384; *McNeely v. Walters,* 211 N.C. 112, 189 S.E. 114; *Scott v. Bryan,* 210 N.C. 478, 187 S.E. 756; *Stone v. Bank of Commerce,* 174 U.S. 412, 43 L. Ed. 1028.

Therefore, in determining whether the doctrine of estoppel applies in any given situation, the conduct of both parties must be weighed in the balances of equity and the party claiming the estoppel no less than the party sought to be estopped must conform to fixed standards of equity. As to these, the essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a

reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially. *Self Help Corp. v. Brinkley,* 215 N.C. 615, 2 S.E. 2d 889; *Bank v. Winder,* 198 N.C. 18, 150 S.E. 489; *Boddie v. Bond,* 154 N.C. 359, 70 S.E. 824; 19 Am. Jur., Estoppel, Sections 42 and 46.

It is elemental that the owner of personal property will not be estopped to assert his title by merely entrusting its possession and control to another. *Bank v. Winder, supra; Motor Co. v. Wood,* 237 N.C. 318, 75 S.E. 2d 312; *Ellison v. Hunsinger,* 237 N.C. 619, 75 S.E. 2d 884; 19 Am. Jur., Estoppel, Sec. 68; 6 Am. Jur., Bailments, Sec. 129.

And this general principle applies none the less in the case of a bailment of personal property for the purpose of sale. In such case, the general rule is that the mere possession by a bailee of the bailor's goods, with authority as agent to sell them, however, unaccompanied by the bailor's further act in clothing the bailee with other *indicia* of ownership inconsistent with the bailor's title, works no estoppel upon the bailor to deny the title of one to whom the property has been transferred in violation of the terms of the bailment, even though he may be an innocent purchaser or encumbrancer. 6 Am. Jur., Bailments, Sec. 130; *Norris v. Boston Music Co.,* 129 Minn. 198, 151 N.W. 971.

Moreover, the rule is that an agent authorized merely to sell has no implied authority to mortgage the property. 2 Am. Jur., Agency, Sec. 119. As to this, the governing principle is thus stated in American Law Institute, Restatement, Agency, Sec. 201: "(1) An undisclosed principal who entrusts a special agent with the possession of a chattel with directions to deal with it in a particular way, as by sale, barter, pledge or mortgage, is not thereby affected in his interests therein by a transaction of a kind different from that authorized." See also Restatement, Agency, Sec. 175.

However, where the owner of a chattel clothes another not only with possession thereof, but also with such *indicia* of ownership as is reasonably calculated to mislead others having a right to rely thereon into believing that the ownership or power of disposition is vested in the bailee, and does so mislead a purchaser or encumbrancer, who, acting in reliance upon such apparent ownership or right of disposition, parts with value or extends credit to the bailee, in good faith and without knowledge, actual or constructive, of the true ownership of the property, such purchaser or encumbrancer will be protected and the true owner will be estopped from denying the possessor's right to sell or encumber the chat-

tel. Under such circumstances, equity will not permit the true owner to gainsay the reasonable inference drawn from his conduct in clothing the possessor with such *indicia* of ownership. 19 Am. Jur., Estoppel, Sec. 68; 6 Am. Jur., Bailments, Sec. 129; American Law Inst., Restatement, Agency, Sec. 202; Annotations: 151 A.L.R. 690; 18 A.L.R. 2d 813. See also Annotation 95 A.L.R. 1319; *Bank v. Winder, supra; Mason v. Williams,* 53 N.C. 478; *Mason v. Williams,* 66 N.C. 564. The rule rests upon the broad equitable doctrine that where one of two equally innocent persons must suffer, he who has so conducted himself, by his negligence or otherwise, as to occasion the loss, must sustain it. *S. v. Sawyer,* 223 N.C. 102, 25 S.E. 443; *Bank v. Liles,* 197 N.C. 413, 149 S.E. 377; *Railroad Co. v. Kitchin,* 91 N.C. 39.

However, he who claims the benefit of an equitable estoppel on the ground that he has been misled by the representations of another must not have been misled through his own want of reasonable care and circumspection. And where the element of actual fraud is absent, the effect of an estoppel ordinarily will be denied where the party claiming it was put on inquiry as to the truth and had available the means for ascertaining it. 19 Am. Jur., Estoppel, Sec. 86.

The evidence in this case discloses that used-car dealer Thorne as bailee was authorized merely to sell the two vehicles belonging to the plaintiff. First, the plaintiff delivered the vehicles to Thorne, unaccompanied by the title certificates. Then two or three months later, the plaintiff turned over to Thorne the title certificates, with the printed assignment forms on the back of the certificates signed by the plaintiff in blank. No sale was made by Thorne, and notary Sears was not called upon to complete the assignment forms or certify execution by the plaintiff.

The question thus posed is whether these incompleted assignments, when considered with the rest of the evidence in the case, were sufficient *indicia* of title to justify the defendant Finance Company in inferring that used-car dealer Thorne was the absolute owner of the two vehicles so as to estop the plaintiff from asserting his title thereto.

In resolving this question it is necessary that we give consideration to pertinent phases of our statute law governing (1) the registration of motor vehicles ownership with the North Carolina Department of Motor Vehicles, and (2) the statutory rules pertaining to the transfer and reissuance of certificates of title issued by the Department of Motor Vehicles.

Subject to certain exceptions not pertinent to this case (G.S. 20-51 and G.S. 20-79), every resident owner of a motor vehicle intended to be operated on any highway of this State is required, before it is so operated, to make application for registration and cause the ownership to be registered with the North Carolina Department of Motor Vehicles. G.S. 20-50.

When the ownership of a motor vehicle is first registered with the Department of Motor Vehicles, a distinctive registration number is assigned to the vehicle and the Department is required to keep a record thereof in suitable books or on card indexes with cross-indexes to the registration keyed to the name of the owner and the motor number or other identifying number of the vehicle, so as to keep current, through successive transfers, the registered ownership of all· motor vehicles required to be registered in this State. G.S. 20-56 and G.S. 20-78.

When a motor vehicle is first registered, the Department of Motor Vehicles is required to issue to the owner a registration card and a certificate of title as separate documents. The registration card, required to be carried in the vehicle to which it refers or by the person operating such vehicle for display on demand by any peace officer, contains upon its face the name and address of the owner, space for the owner's signature, the registration number assigned to the vehicle, and a specific description of the vehicle. The certificate of title contains upon its face the identical information which appears upon the face of the registration card, and in addition thereto the date of issuance and a statement of the owner's title, together with a statement of such liens or encumbrances on the vehicle as are disclosed by the application for registration. The certificate of title also contains on the reverse side a printed form for assignment of title, with space for the notation of liens and encumbrances upon the vehicle at the time of transfer. G.S. 20-57.

Upon sale or transfer of any registered motor vehicle, the owner is required to execute the assignment and warranty of title, in printed form as approved by the Department of Motor Vehicles appearing on the reverse side of the certificate of title. G.S. 20-72 (b).

Subject to an exception not pertinent here, the provisions of G.S. 20-73 require that upon sale of a vehicle and transfer of the certificate of title as required by G.S. 20-72 (b), the new owner, within 20 days after the purchase, shall apply to the Department of Motor Vehicles for a transfer of the registration on its books and for the issuance to him of a new certificate of title showing ownership in him.

However, when the transferee of a vehicle is a dealer who holds the same for resale, such transferee is not required to register the vehicle or forward the certificate of title to the Department as provided by G.S. 20-73, but such dealer-transferee, upon transferring his title to another person is then required to (1) give notice of such transfer to the Department of Motor Vehicles and (2) execute and acknowledge an assignment and warranty of title in form approved by the Department. G.S. 20-75.

Thereupon, the certificate of title, as so transferred and acknowledged by the dealer, is forwarded by him or by the new owner to the Department of Motor Vehicles, with the new owner's application for transfer of regis-

tration, and the Department, upon receipt of a properly endorsed certificate of title and application for transfer of registration, accompanied by the required fee, is required to transfer registration of the vehicle under its registration number to the new owner and issue a new registration card and certificate of title as upon original registration.  G.S. 20-78.

Accordingly, when a dealer acquires a motor vehicle and resells it, his intermediate ownership, no less than that of any other purchaser from the original owner, is required to be reported to the Department of Motor Vehicles.  G.S. 20-75.  And to facilitate re-assignment of title and report of intermediate ownership of the dealer in such cases, an extra printed form appears on the reverse side of the regular form certificate of title issued by the Department of Motor Vehicles.  This re-assignment form for execution by the dealer appears just below the form required to be executed by the registered owner.

In the case at hand, these printed forms on the reverse side of the certificate of title to the Plymouth sedan are as shown below, with the plaintiff's blank endorsement and address being shown in italics.  (The forms on the back of the certificate of title to the Chevrolet truck are substantially the same.)

---

IMPORTANT NOTICE

An assignment of this certificate is not valid until it has been properly assigned by the individual, firm or corporation named on the face hereof and recorded in the office of the Motor Vehicle Bureau. . . .

---

A.        ASSIGNMENT OF TITLE BY REGISTERED OWNER.

For value received, the undersigned hereby sells, assigns or transfers the motor vehicle described on the reverse side of this certificate unto the purchaser whose name appears below in this block, and the undersigned hereby warrants the title to said motor vehicle and certifies that at the time of delivery the same is subject to the following named liens or encumbrances and none other:

| RECORD OF ASSIGNMENT | LIENS OR ENCUMBRANCES |
|---|---|
| Purchaser_____ | Amount of Lien_____$_____ |
| Street or R.F.D._____ | Date of Lien_____ |
| Post Office_____ | Kind of Lien_____ |
| Date of Sale_____ | In favor of_____ |
|  | Address_____ |
| *J. E. Hawkins* | All answers supplied and completely |
| Signature of Assignor (Seller) | subscribed and sworn to before me |
| Use pen and ink | this____day of_____19____.  My |
| *Cedar Grove, N. C.* | commission expires_____ |
| Address | Notary Public |

B.          RE-ASSIGNMENT OF TITLE BY REGISTERED DEALER.

For value received, the undersigned hereby sells, assigns or transfers the motor vehicle described on the reverse side of this certificate unto the purchaser whose name appears below in this block, and the undersigned hereby warrants the title to said motor vehicle and certifies that at the time of delivery the same is subject to the following named liens or encumbrances and none other:

Purchaser_____Amount of Lien_____\$_____
Street or R.F.D._____Date of Lien_____
Post Office_____Kind of Lien_____
Date of Sale_____In Favor of_____
Dealer's License Plate NO._____Address_____

All answers supplied and completely
_____ subscribed and sworn to before me
          Dealer—use pen and ink          this\_\_\_\_day of_____19\_\_.  My
                                          Commission expires_____.

By_____      _____
          Official Title                          Notary Public

It is manifest from the language of the controlling statutes, as well as the printed notice and instructions appearing on the reverse side of the certificate of title, that there can be no valid assignment of a certificate unless and until the printed form assignment on the reverse side is executed in substantial compliance with the language of the form. And there can be no assignment in substantial compliance with the form unless the assignee is named and designated and proof of execution by the assignor is completed by certificate of acknowledgment executed by a notary or other proper officer at the place indicated therefor.

These statutes regulating State registration of motor vehicle ownership derive in the main from the Motor Vehicle Acts of 1923 and 1937. (Ch. 236, Public Laws of 1923, and Ch. 407, Public Laws of 1937.)

The regulations prescribed by these statutes are not mere directory rules incidental to the sale and transfer of motor vehicles, to be observed, to be circumvented, or to be disregarded at the will or pleasure of the seller or purchaser of a motor vehicle. On the contrary, they are salutary police regulations designed and intended to provide a simple, expeditious mode of tracing titles to motor vehicles so as to (1) facilitate the enforcement of our highway safety statutes, (2) minimize the hazards of theft, and (3) provide safeguards against fraud, imposition, and sharp practices in connection with the sale and transfer of motor vehicles. See *Corporation v. Motor Co.,* 190 N.C. 157, 129 S.E. 414.

It is manifest both from the express language of these registration statutes and from the companion penal enforcement statutes that compliance with the registration statutes is mandatory and calls for substantial observance. See G.S. 20-74.

In the case at hand, assignment form "A" on the reverse side of each certificate was incomplete. No purchaser was named in the blank space designated therefor. The forms merely bore the plaintiff's endorsement in blank, without certificate of proof by notary or other certifying officer. These incompleted assignments are fatally defective. The defects are patent. They appear on the face of the printed forms. The defendant had no right to rely on such incompleted assignments as *indicia* of title in Thorne; on the contrary, they are sufficient to have given the defendant constructive notice of Thorne's want of title.

True, the plaintiff had arranged with used-car dealer Thorne and notary Sears for the blanks to be filled in and notarized by Sears. Nevertheless, the crucial fact is that since the defendant knew nothing of this arrangement, he could not have relied on it. Besides, as between the parties to the arrangement, the plaintiff's attempt to authorize notarization was qualified and conditioned on sale by Thorne and collection of the purchase money by Sears. Thorne was a mere agent to sell. He had no authority to mortgage. Therefore, on the record as presented, with the plaintiff's endorsements standing unauthenticated by notary or other certifying officer, the defendant was without actual knowledge that the plaintiff's endorsements were his genuine signature. The defendant in so assuming necessarily relied not on the act of the plaintiff in endorsing the certificates, but wholly upon the affirmative representation of used-car dealer Thorne that he owned the two vehicles.

This in effect is admitted by the defendant. Its manager Richardson, who closed the mortgage loan with Thorne, testified in pertinent part: "I did not know J. E. Hawkins and made no effort to contact J. E. Hawkins to find if that was his signature. I did not know that it was and I don't remember if Mr. Thorne told me it was. All I know is that J. E. Hawkins appeared on the back. I made no effort to contact Mr. Hawkins to find if he had disposed of these vehicles and I had no knowledge of how Mr. Thorne came into their possession. . . . *I relied solely on G. A. Thorne."* (Italics added.)

Moreover, the defendant in assuming that Thorne was the owner of the vehicles and in making the mortgage loan admittedly was relying on a practice alleged to have developed in the used-car trade whereby a dealer in purchasing a vehicle takes the certificate of title from the seller endorsed in blank, and on resale inserts the name of the new owner and then by anonymous notarization clears the transaction as one solely between the original seller and the new owner, thus withholding from the Depart-

ment of Motor Vehicles disclosure of the intermediate ownership of the used-car dealer.

This practice is specially pleaded and relied upon by the defendant as the chief ground for support of its plea of estoppel. The defendant alleges: "that it is customary in the used car business for the dealer to take the title of a car purchased with the signature of the seller and to fill in the purchaser's name when a sale is made so that two transfers of title would be unnecessary."

In support of this allegation the defendant's manager Richardson testified in part: "It is a common practice for a dealer to bring a certificate of title like that (signed in blank by the owner) because all the dealers that I can name today are notaries. They bring in a certificate of title with just the name of the former owner signed and we go ahead and loan money on that basis." And on cross-examination this witness further testified: "When a dealer comes into my place of business and has a title made out to anybody on the face of it with no purchaser named and the dealer's name not appearing on the title I do not hesitate to loan him money. I am relying on the dealer and his honesty and credibility."

This practice of clearing a purchase and a resale as a simulated single transaction, whereby the intermediate ownership of the used-car dealer is not shown on the registration records of the Department of Motor Vehicles, is violative of both the letter and spirit of our statutes requiring registration of motor vehicle ownership. Whereas, the companion practice of anonymous notarization of legal instruments strikes at the very integrity of our probate procedure.

These practices may not be used as a basis for invoking the doctrine of estoppel. To permit such would be to legalize by indirection this practice of suppressing notice of intermediate dealer ownership as well as the companion practice of anonymous notarization of transfer certificates, and thereby override the salutary procedure fixed by statute for the prevention and suppression of the very type of fraud and chicanery with which we are at grips in the instant case. The public policy of this State as fixed by these statutes may not be put to naught in such manner. The principles of equity will not permit.

This question does not appear to have been presented heretofore to this Court for determination, nor does the precise factual situation here involved appear to have been presented in any of the cases from other jurisdictions brought to our attention. However, decision here reached is supported in principle by well-considered decisions from other jurisdictions, among which are these: *Moberg v. Commercial Credit Corporation,* 230 Minn. 469, 42 N.W. 2d 54; *A. C. Nelsen Auto. Sales, Inc. v. Turner,* 241 Iowa 927, 44 N.W. 2d 36; *Erwin v. Southwestern Investment Co.,* 147 Texas 260, 215 S.W. 2d 330; *Pearl v. Interstate Securities Co.,* 357

Mo. 160, 206 S.W. 2d 975; *S. c.*, 217 S.W. 2d 302. See also *State ex rel. Connecticut Fire Ins. Co. v. Cox*, 306 Mo. 537, 268 S.W. 87, 37 A.L.R. 1456; *Security Credit Corp. v. Whiting Motor Co.*, 98 N.J.L. 45, 118 A. 695.

It follows from what we have said that the certificates of title, endorsed in blank, are insufficient, when considered with the rest of the evidence in the case, to raise an estoppel against the plaintiff's undisputed legal right, and Judge Bone correctly so·held in peremptorily instructing the jury in favor of the plaintiff on the issues submitted. The rule is that where only one inference can reasonably be drawn from undisputed facts, the question of estoppel is one of law for the court to determine. 19 Am. Jur., Estoppel, Sections 200 and 201. See also *Davis v. Warren*, 208 N.C. 174, 179 S.E. 329; *Mercantile Co. v. Ins. Co.*, 176 N.C. 545, 97 S.E. 476.

No error.

BARNHILL, J., dissents.